## STATE v. HAYES.

A challenge to the regular panel having been interposed by accused and allowed, an order directing the sheriff to summon forthwith from the body of the county 24 citizens, possessing the qualifications of jurors, to serve as petit jurors for the pending term, was expressly authorized by Rev. Code Cr. Proc. § 303.

Code Cr. Proc. § 303, providing that, when a challenge to the regular panel is allowed, the court must discharge the jury and another may be summoned for the same term forthwith from the body of the county or subdivision, or the judge may order a jury to be drawn and summoned in the regular manner, is not in conflict with Const. art. 6, § 7, guaranteeing a speedy public trial by an impartial jury out of the county or district in which the offense is alleged to have been committed.

That the sheriff's name was indorsed on the information as a witness for the state did not as a matter of law disqualify him to summon a new jury panel to try accused.

That the name of the sheriff was indorsed on an information against accused as a witness for the state did not constitute implied bias as defined by Rev. Code Cr. Proc. § 338, so as to disqualify him to summon a new jury to try accused.

Where a sheriff having apprehended accused secured and preserved evidence against him, and had formed an opinion as to his guilt, but it did not appear that he had conferred with any one summoned as a juror or attempted to influence any juror's judgment, and it also did not appear that the special panel summoned by the shriff was not composed of as intelligent, reliable, and impartial persons as would have been secured had a special panel been otherwise summoned, accused, not having objected in the first instance to the special panel be-

ing summoned by the sheriff, was not entitled to have the same quashed because of the sheriff's alleged actual bias.

A special panel having been summoned by the sheriff to try the accused, he objected thereto because of the sheriff's actual bias, in support of which objection he was permitted to examine the sheriff as to his qualifications. The challenge being disallowed, and the special panel exhausted, the sheriff was ordered to summon a second to which panel when summoned accused also for the first time objected on the same ground. **Held,** that the court did not err in refusing to permit a re-examination of the sheriff; there being no offer of different proof from that introduced in support of the previous challenge.

Refusal of requested instructions covered by the instructions of the court is not error.

An information charged murder, and the court instructed that if the killing was done with malice aforethought and with a premeditated design to effect deceased's death, without authority of law, and without justifiable or excusable cause, defendant would be guilty of murder as charged, and the jury should so find and fix his punishment at death or imprisonment for life, but, if the jury had reasonable doubt as to the defendant's guilt of murder, it should acquit him of that charge, and determine whether he was guilty of manslaughter in the first or second degree, in which event they would use a specified form of verdict. **Held,** that a verdict finding accused guilty "as charged in the information" and fixing "his punishment at death" was not objectionable for uncertainty.

(Opinion filed, Sept. 3, 1909.)

Appeal from Circuit Court, Lawrence County. Hon. W. G. RICE, Judge.

Charles A. Hayes was convicted of murder, and he appeals. Affirmed.

*Robert C. Hayes* and *John T. Heffron,* for appellant. *S. W. Clark, Atty. Gen.;* and *Robert P. Stewart, Special State's Attorney,* for the State.

HANEY, P. J. Upon the issues raised by an information charging murder and a plea of not guilty, the jury in this action returned a verdict finding the defendant guilty as charged, fixing his punishment at death. The testimony of the state tended to prove that Lena Scharr and Fred Samuelson, who worked for the former's father, were in a corral; that Miss Scharr was near Samuelson, waiting for him to finish milking, when the accused came across the fence saying, "I am tired of this," and shot immediately; that Miss Scharr ran to the corral gate followed by Samuelson; that

three more shots were fired by the accused and Samuelson fell; that the accused directly came to the house, and asked where Lena's mother was, saying, "I will get her next"; that the accused then had a revolver; and that Samuelson's back was towards the accused when all the shots were fired. A physician testified that an examination of Samuelson's body disclosed a wound extending from three inces below the shoulder blade caused by a bullett which was imbedded beneath the edge of the breastbone, and which had passed through the heart and left lung, producing practically instantaneous death. The accused, as a witness on his own behalf, testified in part as follows: "I went to Scharr's place that evening because I had an engagement for the next morning with Miss Lena Scharr, and I was going to work the next morning for Mr. Morrell, and I had to let her know before going to work. I saw her in the corral about 8 o'clock in the evening. I was at the northwest corner of the corral on the outside, and she was about 15 feet from me in the corral and about the same distance from the gate—down in the corner of the corral by the gate. Mr. Samuelson was there. They were standing as close as they could together. He stood with his arm around her waist and her arm around his shoulder. His back was toward me, and her face in his breast, the other side of him. Her face was toward me, but behind him. The cow was walking a little way from them going up the hill. Samuelson put his hand under the girl's clothes. That made me angry. My feelings were too angry to be expressed. I jumped over the fence, and went straight at them as fast as I could with both my hands in the air. My purpose was to separate them. At that time I had no intention of taking the life of Samuelson. When I got within four feet of Mr. Samuelson, the girl says, she kind of moved a little bit, and she says' 'There is Bill,' meaning me. Samuelson turned around to me, and threw one hand to his hip pocket. His back had been to me, and, as I approached him and those words were used by Lena Scharr ,he whirled facing me, and threw his hand to his hip pocket. He turned on me quick, and the motion to his hip pocket was as quick as anybody could make it. I thought I would be shot. I was at that time in fear of imminent death. * * * When Samuelson made this motion to his hip pocket, I drew my gun as quick as I

could, and fired just as quick as I drew the gun. Samuelson was standing facing me at the time I fired the first shot. The shots were fired rapidly and in the direction of the opposite corner of the corral. I didn't change the direction of the gun during the firing. I didn't see Samuelson after the first shot was fired. It was too dark, and the flash of the gun blinded me so that I could see nothing. When I got over the fence, Lena ran straight through the gate, and that was the last I saw of her at that time. I didn't know after the shots were fired that I had wounded Samuelson. My object was to protect myself. I was angry, I reckon." Defendant also testified, in substance, that he was engaged to marry Miss Scharr when she was about 15 years of age, but that the engagement was "kind of broken off" a year and a half afterward. Miss Scharr, who was 18 at the time of the homicide, stated that, if she ever was engaged to the accused, it was when she was 13 years old.

A challenge to the regular panel having been interposed by the accused and allowed, the court ordered the sheriff to "summon forthwith from the body of the county * * * 24 citizens possessing the qualifications of jurors * * * to serve as petit jurors for "the pending term, to which order no objection was made or exception taken by the accused. The sheriff having complied with such order, and the jurors thus summoned having appeared, the accused challenged the special panel upon the following grounds: (1) The court was not authorized to make the aforesaid order. (2) The sheriff was not qualified to execute such order (a) because he was named as a witness on the information; (b) because he had formed and expressed an unqualified opinion as to the merits of the controversy; (c) because he had been engaged for weeks in the pursuit and capture of the accused; (d) because he had talked with material witnesses named on the information; (e) because he had gathered and retained various objects of a material nature which the statute intended to introduce in evidence; (f) because he had assisted the state's attorney in examining the accused while in custody as to material facts; and (g) because he had by other acts and conduct disqualified himself from selecting the special panel. (3) The panel summoned pursuant to such order did not

constitute or permit the selection of such an impartial jury as the Constitution requires. The sheriff was called as a witness by the accused in support of the challenge, and testified, in substance, that he was actively engaged in the pursuit and arrest of the accused; that he collected evidence against him; that he had talked with material witnesses for the state; that he had conversed to some extent with the accused; that he had formed and may have expressed an opinion as to the guilt of the accused; that such opinion was an unqualified one; that it remained unchanged at the time the special panel was summoned, but that he had no bias against the accused; that he "was very sorry for the man"; and that he selected the special panel as fairly as he could in accordance with his position as sheriff; and as fairly as his conscience would permit him to do. The challenge was disallowed, to which ruling the accused duly excepted.

The argument of counsel is to this effect: (1) The method of selecting this special panel is not authorized by the statute; or (2), if it is, the statute is unconstitutional; and (3), conceding the method to be authorized and constitutional, the person directed to summon the panel was disqualified. "The jurors duly drawn and summoned for the trial of civil actions are also the jurors for the trial of criminal actions." Rev. Code Cr. Proc. § 302. "Trial juries for criminal actions may also be formed in the same manner as trials juries in civil actions." Id. § 303. When a challenge to the regular panel is allowed; "the court must discharge the jury, and another jury can be summoned for the same term forthwith from the body of the county or subdivision; or the judge may order a jury to be drawn and summoned in the regular manner." Id. 328. It is therefore clear that the method pursued by the learned circuit court was expressly authorized by the statute. It is equally clear that the statute does not conflict with the right "to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." Const. S. D. art. 6, § 7. The right to an impartial jury is not new. It did not originate with the Constitution. Impartiality was an essential attribute or element of trial by jury as defined by the common law. Lommen v. Minn. Gaslight Co.; 65 Minn. 196; 68 N. W. 53,

33 L. R. A. 437, 66 Am. St. Rep. 450. Of the two methods of selection authorized by the statute the one pursued in this instance is the one prescribed by the common law itself." U. S. v. Beebe, 2 Dak. 292, 11 N. W. 505. Manifestly a provision of the Constitution designed to preserve the common-law right to trial by jury is not violated by a statute authorizing the common-law method of procedure. Moreover, "the mode of selecting the jury is only the means to an end, and only goes to the question of impartiality." Lommen v. Minn. Gaslight Co., supra. Reasonable means to the desired end have been provided. When the special panel is returned, it is subject to challenge for bias of the officer who summoned it, and each juror may be challenged peremptorily or for cause. No person, however selected, need be sworn as a juror before a presumptively impartial judge is satisfied that such person "will act impartially and fairly upon the matters to be submitted to him." Rev. Code Cr. Proc. §§ 317-349. Having no doubt as to the validity of the statute, we proceed to consider the qualifications of the sheriff. "When the panel is formed from persons whose names are not drawn as jurors, a challenge may be taken to the panel on account of any bias of the officer who summoned them, which would be good ground of challenge to a juror." Id. § 327. The fact that the sheriff's name was indorsed on the information as a witness for the state did not as a matter of law disqualify him, nor was he disqualified on account of any implied bias as defined by the statute. Id. § 338. So, if disqualified, it was on the ground of actual bias—"the existence of a state of mind on the part of the juror, in reference to the case or to either party, which satisfies the court, in the exercise of a sound discretion, that he cannot try the issue impartially without prejudice to the substantial rights of the party challenging." Id. 338. And the ruling of the learned circuit court should not be reversed in the absence of a clear abuse of discretion. State v. Hall, 16 S. D. 6, 91 N. W. 325, 65 L. R. A. 151. Though the sheriff appears to have faithfully performed his official duty in apprehending the accused, in securing and preserving evidence against him, and to have formed an opinion as to his guilt, it does not appear that he conferred with any one summoned as a juror or in any manner attempted to influence any juror's judgment.

Nor does it appear that the special panel was not composed of as intelligent, reliable, and impartial persons as would have been secured through the other method prescribed by the statute. The learned circuit court was in position to observe the demeanor of the officer, the character of the persons summoned, and all the circumstances attending the trial. The accused was given ample opportunity to thoroughly examine each proffered juror for cause; to exercise the peremptory challenges allowed by the statute, was, we are satisfied, afforded as ample means of securing an impartial jury as he would have been through the method which he rejected by objecting to the regular panel. Moreover, he in effect consented to the appointment of the sheriff by not objecting or excepting to the order directing that officer to summon the special panel, and "he who consents to an act is not wronged by it." Rev. Civ. Code, § 2414. Therefore, though it might have been wiser to have avoided the question here presented by the appointment of some person against whom no possible objection could arise, it is clear that the ruling of the trial court does not constitute reversible error.

The special panel having been exhausted, the sheriff was ordered to summon a second, to which order no objection or exception was interposed. Upon the return of the second special panel, it was challenged by the accused upon the same grounds as the first, and the court disallowes the challenge, declining to permit the accused to again examine the sheriff. The refusal to allow a reexamination of the sheriff was not reversible error when the accused did not object to the order designating the sheriff as the officer to summon the second special panel, and when the accused made no offer of proof different from that introduced in support of the previous challenge.

The contention that the court erred in refusing to give certain instructions requested by the accused is not tenable. The rule is everywhere recognized, and has been often followed by this court, that it is not reversible error to refuse requested instructions if the substance of such instructions is covered by the charge as given by the court on its own motion, as was the case in this instance. The jury was instructed that they might under the information find the accused guilty of murder, manslaughter in the first degree,

or manslaughter in the second degree. The essential elements of each of these offenses or degrees of the same offense were clearly stated. The distinction between each and the doctrine of self-defense were clearly defined; and, taken as a whole, no ordinarily intelligent juror could have understood the charge otherwise than as requiring an acquittal of each offense or degree of the same offense, if every essential element of each was not establishd beyond a reasonable doubt.

Finally, it is contended that the verdict is not definite and certain as to the offense of which the accused was convicted. Considering the language of the verdict in connection with the information and charge of the court, there is no room for doubt as to the intention of the jury. The information hcarged the crime of murder. The learned circuit court instructed the jury: "If, after considering all of the evidence in the case, you are satisfied beyond a reasonable doubt that the defendant shot the deceased, Fred Samuelson, and that the shooting was within the jurisdiction of this court—that is, within this county and state—and that it was done of the malice aforethought and with the premeditated design to effect the death of the deceased with intent to kill him, without authority of law and without justifiable or excusable cause, he would be guilty of murder as charged in the information and you should so find by your verdict, and, if you find the defendant guilty of murder as charged in the information, the duty would rest with you to fix the punishment, and, if you find the defendant guilty of murder beyond a reasonable doubt, you would have a right to fix the punishment at death or imprisonment in the state penitentiary for the balance of his natural life. If, after considering all of the evidence in the case, you entertain a reasonable doubt as to the guilt of the defendant as to the crime of murder, it would be your duty to acquit him as to that charge, and further determine whether he is guilty of manslaughter, and, if, after considering all of the evidence in the case; you should determine that the defendant was guilty of manslaughter in either the first or second degree under the evidence and the law as given to you by the court, you would so find by your verdict, and your judgment would be: 'We, the jury in the above entitled action, find the defendant guilty of man-

slaughter in (naming whether in the first or second degree)." The jury found the accused guilty "as charged in the information," and fixed "his punishment at death." The motion in arrest of judgment on the ground of uncertainty in the verdict was properly overruled.

The judgment of the circuit court is affirmed.