## NOBLE BOWLEGS v. STATE.

No. A-1477.   Opinion Filed March 22, 1913.

(130 Pac. 824.)

1. **TRIAL—Verdict—Degree of Offense.** The provision of Procedure Criminal (section 6874, comp. Laws 1909, [sec. 5922, Rev. Laws]) that "whenever" a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty," must be construed in connection with other provisions; i. e., section 6873, authorizing a general verdict of "guilty" or "not guilty," and declaring that such verdict "imports a conviction or acquittal of the offense charged," and section 6878, providing that the court may direct informal verdicts to be reconsidered, and "rendered in some form from which it can be clearly understood what is the intent of the jury," also section 2028 of the Penal Code, providing that the jury shall "assess and declare the punishment in their verdict."

2. **HOMICIDE—Verdict—Definiteness.** On the trial of an indictment for murder, the court instructed the jury, in effect, that they might find the defendant guilty of murder, and, if they should so find, they must designate in their verdict whether he shall be punished by death or imprisonment for life, but, if the jury had a reasonable doubt as to the defendant's guilt of murder, they should acquit him of that charge, and determine whether he was guilty of "manslaughter in the first degree," and, if they should so find, his punishment must be by imprisonment for not less than four years, and that, if every essential element of this offense was not established beyond a reasonable doubt, it was the duty of the jury to acquit him, and so say by their verdcit. The issue of "manslaughter in the second degree" was not submitted to the jury. The verdict was: "We, the jury, * * * do upon our oaths find the defendant guilty of manslaughter as charged in the indictment, and assess

his punishment at confinement in the state prison for a period of ten years." Held, that the verdict is sufficiently definite and certain as to the offense of which the defendant was convicted, and is in fact a verdict of guilty of manslaughter in the first degree.

3. NEW TRIAL—Newly Discovered Evidence—Impeaching Testimony. A verdict should not be set aside because of affidavits being filed| in support of motion for new trial, showing that the affiants had heard a witness for the state make statements directly contrary to such witness' testimony in the trial.

4. APPEAL—Harmless Error. Technical errors or defects which do not affect the substantial rights of the defendant must under section 6957, Comp. Laws 1909, (Sec. 6005, Rev. Laws), be disregarded on appeal. Prejudice is not presumed from error being made to appear, in the absence of reasonably clear indications that the defendant was thereby prejudiced upon the merits, or that it tended to his prejudice in respect to a substantial right.

(Syllabus by the Court.)

*Appeal from District Court, Seminole County;*
*Tom D. McKeown, Judge.*

Noble Bowlegs was convicted of manslaughter in the first degree, and he appeals. Affirmed.

*J. Coody Johnson,* for plaintiff in error.

*Chas. West,* Atty. Gen., *Smith C. Matson,* Asst. Atty. Gen., *Jos. L. Hull,* Special Asst. Atty. Gen., for the state.

DOYLE, J. The plaintiff in error, hereinafter referred to as the defendant, was in the district court of Seminole county convicted of manslaughter in the first degree under an indictment charging him with the murder of one Caesar Stepney on or about November 26, 1908, in said county, and in accordance with the verdict of the jury was on February 2, 1911, sentenced to serve a term of ten years in the penitentiary. From the judgment of conviction, the defendant has appealed.

Briefly stated, the record discloses the following facts: That on the night of the death of Caesar Stepney, the defendant, Noble Bowlegs, together with Tom Jefferson and a number of negroes, were at the home of Geo. Stepney. The defendant and Tom Jefferson were engaged in what is commonly known

as a crap game. Caesar Stepney was not playing, but, with Pinkie King, was standing by, presumably watching the game. A difficulty arose between Jefferson and the defendant, and they pulled pistols, and commenced to shoot. Caesar Stepney was killed. Jefferson was wounded.

It was the theory of the state that the defendant in making the murderous assault upon Jefferson shot and killed Caesar Stepney. The defendant claimed that he did not fire the shot which killed Stepney, and that, if he did fire said shot, he was justified in doing so because said shot was fired in his necessary self-defense at Tom Jefferson.

The alleged error upon which the defendant most confidently relies for a reversal of the judgment against him is that the verdict is insufficient to sustain the judgment. The verdict is as follows:

"We, the jury, drawn, impaneled, and sworn in the above-entitled cause, do upon our oaths find the defendant, Noble Bowlegs, guilty of manslaughter as charged in the indictment herein and assess his punishment at confinement in the state prison for a period of ten years."

Counsel contends that the verdict is insufficient, because it fails to observe the requirements of section 6874, Procedure Criminal (Comp. Laws 1909), which provides:

"Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty."

The court instructed the jury that they might upon the indictment find the defendant guilty of murder, or of manslaughter in the first degree, and that, if they found the defendant guilty of murder, they must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor; and, if they should find him guilty of manslaughter in the first degree, his punishment must be by imprisonment in the state prison for not less than four years. The essential elements of each of these offenses were clearly stated, and the doctrine of self-defense clearly defined, and that, if every essential element of each offense was not established

beyond a reasonable doubt, it was the duty of the jury to acquit him, and so say by their verdict. Manslaughtar in the second degree was not included in the issues submitted to the jury by the instructions of the court. The verdict was received, read, and recorded without objection on the part of the defendant.

This provision of Procedure Criminal must be interpreted in connection with other provisions which have a bearing on the question, as will be seen by reference to the same. Section 6873 provides that:

"A general verdict upon a plea of not guilty, is either 'guilty,' or 'not guilty,' which imparts a conviction or acquittal of the offense charged in the indictment."

Section 6878:

"If the jury render a verdict not in form, the court may, with proper instructions as to the law, direct them to reconsider it, and it cannot be recorded until it be rendered in some form from which it can be clearly understood what is the intent of the jury."

Section 6957:

"On an appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

Section 2028 of the Penal Code provides:

"In all cases of a verdict of conviction for any offense against any of the laws of the state of Oklahoma, the jury may, and shall upon the request of the defendant assess and declare the punishment in their verdict and the court shall render a judgment according to such verdict, except as hereinafter provided."

The object and intention of section 6874 evidently was to guard and protect the rights of the defendant, so that the court in inflicting the punishment might be advised of the exact nature of the crime of which he was convicted. The object is fully accomplished where the jury under section 2028 assess and declare the punishment in their verdict.

There is a wide divergence of judicial opinion upon the question which this contention presents. The courts of several

states have held without qualification that the degree of the crime must be specifically stated in so many words, and that it cannot be ascertained from the evidence, the instructions, or the punishment assessed. On the other hand, the courts of several states hold that, where the jury is required by statute to find the degree of the crime of which the defendant is guilty, a verdict which does not expressly state the degree is sufficiently definite and certain as to the degree of which the defendant was convicted, if the assessment of punishment clearly indicates such degree. The cases which sustain this doctrine which we have examined are as follows: *Hays v. Commonwealth* (Ky.) 14 S. W. 833. In this case the indictment was for murder and the verdict was:

"We, the jury, find the defendant guilty, and fix his punishment at five years in the penitentiary."

The Court of Appeals of Kentucky in the opinion said:

"The 257th section of the Criminal Code provides that a general verdict upon a plea of not guilty shall be guilty or not guilty; 'and, if guilty, fixing the offense and the degree of the offense, and the punishment in cases in which the jury is required to fix the degree of punishment.' Certainty is highly important to a proper administration of the criminal law; but it should not go so far as to sacrifice substance to form. Under our law, one indicted for murder may be convicted of manslaughter. The jury were told, if they found the accused guilty of murder, they must fix his punishment at death or confinement in the penitentiary for life, but, if guilty of manslaughter, at not less than two, nor more than twenty, years' confinement in the penitentiary. It is therefore absolutely certain from the verdict that the jury intended to and did find the accused guilty of manslaughter. While properly the verdict should have said so, yet it substantially does, by the punishment awarded. Judgment affirmed."

And the same court in *Hunn v. Commonwealth,* 143 Ky. 143, 136 S. W. 144, held:

"Failure of a verdict to name the offense of which the jury found defendant guilty does not invalidate it if from its lan-

guage as a whole no doubt can arise as to the offense of which he was convicted."

In *State v. Hayes,* 23 S. D. 596, 122 N. W. 652, the Supreme Court of South Dakota in a homicide case held:

"That a verdict finding accused guilty 'as charged in the information' and fixing 'his punishment at death' was not objectionable for uncertainty."

In *State v. Pepoon,* 62 Wash. 635, 114 Pac. 449, the Supreme Court of Washington said:

"The fourth contention is that a verdict of guilty as charged is not a sufficient finding of the degree, where the statute requires the degree to be found by the jury. In addition to the fact discussed above, viz., that under the testimony no other degree of guilty could have been found by the jury, there is no difficulty in interpreting this verdict. It was as follows: 'We, the jury in the case of the State of Washington, Plaintiff, v. Geo. Pepoon, Defendant, find the defendant guilty of the crime as charged in the information.' So that it was just as certainly a verdict of murder in the first degree as though it had been so stated in so many words, and, the court would have no difficulty whatever in pronouncing the proper judgment. Any verdict which clearly indicates the conclusion reached by the jury is sufficient. *State v. McCormick,* 56 Wash. 469, 105 Pac. 1037."

We shall not attempt to review the many authorities contrary to this view which are cited by counsel in his elaborate brief. However, we think it will be found by reference to the cases cited that many of them rest on the reason that the statute is mandatory, or the jury are not required to assess the punishment. While the verdict in the case at bar is technically informal, it is sufficiently definite and certain as to the offense and the degree of which defendant was convicted, and it is, in fact, a verdict of guilty of manslaughter in the first degree. We think the defect is not sufficient to affect the substantial rights of the defendant. He was present, his counsel was there, and this verdict was received and read in his hearing, and no objection was made. It is our opinion that the error is not one which will justify a reversal of the judgment. It is claimed

that the court erred in several of its instructions, and some half dozen are briefly criticized. We have carefully examined the instructions, and we think the instructions criticized are correct, and the instructions as a whole present the law of the case clearly and correctly.

Finally, it is insisted that the court erred in refusing to grant a new trial, based upon the insufficiency of the evidence to support the verdict and upon the ground of newly discovered evidence, as appears from the affidavits of Isaac Williams, J. P. Davis, Jones Williams, and Minnie Bowlegs, to the effect that Pinkie King said to Vernie Bowlegs in the presence of affiants a few days before the trial, that when the trouble between the defendant and Jefferson started she ran into the side room and covered up her head until the shooting was over, and that no one could tell who fired the fatal shot. And it is argued that the testimony of Pinkie King was the only testimony tending to show that the defendant fired the shot that killed Stepney, and that her testimony was false and untrue. Pinkie King testified on the trial that she and Caesar Stepney ran into an adjoining room when the shooting began; that Caesar Stepney was shot and fell dead across the bed; that she looked back after hearing the shot, and saw Noble Bowlegs standing in the door to this room with a gun in his hand, pointing towards the bed where Stepney had fallen, shot through the head. There is other testimony that the defendant fired the fatal shot. George Stepney testified that he was sitting by Tom Jefferson when the shooting occurred; that Jefferson, after the defendant's first shot, fell into a corner, and fired one shot which went into the ceiling, and the defendant fired three or four more shots. The testimony showing the position of the parties, the size of the defendant's pistol and the size of the wound all tends to show that the defendant fired the fatal shot. It is also in evidence that he became a fugitive from justice, and was finally apprehended at Omaha, Neb., where he was living under an assumed name. The showing was entirely insufficient to au-

thorize any disturbance of the verdict, and the trial court properly overruled the motion for new trial.

Having examined every question presented by counsel, we are of the opinion that the defendant has no just cause of complaint; that he received a fair and impartial trial; and that the verdict of the jury is upon the testimony a just one. The judgment of the district court of Seminole county is therefore affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.