## DICK COLEMAN v. STATE.

No. A-3271.    Opinion Filed December 13, 1919.

1. **HOMICIDE—Assault with Intent to Kill—Included Offense—Verdict.** On an information under Penal Code (section 2336, Rev. Laws 1910) for assault and battery by means of a deadly weapon with intent to kill, where the instructions of the court submitted the included offense of assault with a dangerous weapon with intent to do bodily harm as defined, first clause, section 2344, Rev. Laws 1910, the verdict was, "guilty of an assault to do great bodily harm as charged in the information." Held, that the verdict was responsive and sufficiently definite and certain as to the offense of which defendant was convicted, and was, in fact, a verdict of "guilty of assault with a dangerous weapon with intent to do bodily harm."

2. **TRIAL—Verdict—Uncertainty.** A verdict will not be held void for uncertainty if its meaning can be determined by reference to the record proper.

3. **SAME—Time to Object to Verdict.** A verdict, although defective in form, which expresses the intention and purpose of the jury to

find defendant guilty of assault with a dangerous weapon with intent to do bodily harm, should have been objected to when returned, which would have called the attention of court to its defective form, and given opportunity for its correction.

*Appeal from District Court, Jefferson County;*
*Cham Jones, Judge.*

Dick Coleman was convicted of an assault with a dangerous weapon with intent to do bodily harm, and appeals. Affirmed.

*Bridges & Vertrees,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

DOYLE, P. J. The information in this case charges:

"That Dick Coleman, did in Jefferson county and in the state of Oklahoma, on or about the 16th day of July, A. D. 1916, and anterior to the presentment hereof commit the crime of assault with intent to kill in the manner and form as follows, to wit:

"That the said Dick Coleman, then and there being, did, intentionally, wrongfully and feloniously, commit an assault and battery upon one Britton Duke, with a certain dangerous and deadly weapon, to wit: a hammer, which he, the said Dick Coleman, then and there held in his hands, and with which said hammer he, the said Dick Coleman, did strike, beat and wound the head and body of the said Britton Duke, with such force as was likely to cause death, and with the intent of him the said Dick Coleman, to injure and kill the said Britton Duke, contrary to," etc.

It appears that the defendant had land adjoining the ranch of W. S. Davis, and a tenant thereon named Lee Smith; a part of his farm was a pasture enclosed by a wire fence. On the morning of the difficulty four or five of Davis' hands drove a large herd of cattle by the de-

fendant's pasture to a dipping vat. Some of the cattle broke into this pasture, tearing the fence down in several places. After the cattle had passed, the defendant and his tenant, Lee Smith, began to repair the fence. Britton Duke, an employe of Davis, assisted in driving the cattle and rode back looking for a bull that had strayed away. He stopped in front of Smith's house and engaged in a friendly conversation with Smith, and Smith asked him to get down off his horse and assist in repairing the fence.

The prosecuting witness testified:

"I told Smith there was no use for me to get down to help; I could not do anything; I didn't have anything to do it with; but I would come back after dinner. I got down to girt my saddle and I told him if the fence had been any account the cattle would not have gone through; that we did all we could to keep them out, but we could not help what they had done. The defendant started towards me and said, 'I will fix you,' and came around in front of my horse and struck at me like he was going to throw the hammer. I failed to get on the horse and I started away and the defendant hit me with the hammer. The next I recollect they were pouring water on me."

It appears that a week later Britton Duke was taken to a hospital at Ft. Worth. Dr. Harris and Dr. Derr testified that they found a scalp wound on the top of his head and one a little back and above the right ear. An examination of the wounds disclosed that one was a large fracture with fragments pressed in on the brain, and had the appearance of having been made by a glancing lick of a hammer or some blunt instrument. The other was a round depression in the skull, and a round piece of the bone a little larger than a half dollar was driven into the brain, and had the appearance of having been made by a

stroke with a hammer or round blunt instrument. They removed the piece of the skull and Duke remained unconscious for six or seven days.

The evidence upon the part of the defense was as follows:

Lee Smith testified that—

"Britton Duke rode back on his horse and stopped and I walked out to where he was and we were talking, and I asked him to help put the fence back, and Duke said: 'I have not been to dinner. Why don't you make the damn landlord fix the fence?' And Coleman raised up and said, 'You boys should not go over my fence and laugh about it,' and started to walk towards Duke, and this boy said, 'Throw your hammer down, God-damn you,' and pulled out of his pocket a little old two-by-four knife, open, and Coleman said, 'I will throw it at you,' and this boy made a step like he was going towards Coleman and Coleman threw the hammer and this boy fell to the ground. I said, 'Dick, that is enough,' and I started to the house and got some water and brought it back and Coleman washed his face. A neighbor, Mr. Shad, drove up in a hack and Coleman asked him if he would carry the boy to the ranch."

The defendant, Dick Coleman, testified:

"I was fixing the fence. I got the hammer from Lee Smith. I heard the conversation between Britton Duke and Lee Smith; they were talking about the weather and Lee asked him if he would help fix the fence, and this boy says, 'Why don't you make that landlord fix the fence?' They were not over ten or twelve feet from the fence. Lee asked him again would he help fix the fence, and he said, 'I have not been to dinner.' I turned around and came back where they were talking and I says, 'You boys tore this fence down several times; you all ought to quit it; if it was me tearing Davis' fence down he would make me trouble'; and he said, 'We don't particularly give

a damn about the fence,' and he stepped towards me with his knife and said, 'God-damn you, throw that hammer down,' and I threw the hammer at him; it hit him on the side of the head and he fell—all doubled up in a knot. I sent Lee to the house after water; I held him in my lap while Lee was gone and when he came back we washed his head and loaded him into the hack and he fell once or twice in the hack."

The instructions given by the court submitted the issue of "assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death," as defined by the second clause of section 2336, Rev. Laws 1910; also the included offense of assault upon the person of another with any sharp and dangerous weapon with intent to do bodily harm, as defined by the first clause of section 2344, Rev. Laws 1910. The essential elements of each of these offenses were clearly stated and the doctrine of self-defense clearly defined.

The following instruction was also given:

"No. 9. You are instructed, gentlemen of the jury, that, if after a full and fair consideration of all the facts and circumstances in evidence you fail to find the defendant guilty of the charge as laid in the information, you should then consider the facts and circumstances in evidence to determine whether or not he is guilty of the offense of an assault with a dangerous weapon with intent to do bodily harm, and should you find beyond a reasonable doubt that he is guilty of this lesser offense, you should return a verdict of guilty and assess his punishment under the instructions herein given.

"You are further instructed that if upon consideration of all the evidence in this case, you are in doubt as to which of the two degrees of crime herein stated the defendant is guilty of, but entertain no doubt of his guilt,

you should in such case give him the benefit of the doubt and find him guilty of the lower degree."

The jury returned the following verdict:

"We, the jury empaneled, sworn and charged in the above entitled cause, do upon our oaths find the defendant guilty of an assault to do great bodily harm as charged in the information herein, and leave his punishment to the court."

To this verdict no objection was made when the same was returned by the jury, and the sufficiency of the same was not challenged in the motion for a new trial, and no motion in arrest of judgment was filed.

September 18, 1917, the court rendered judgment on the verdict and sentenced the defendant to serve a term of one year in the penitentiary at Granite.

The sufficiency of the verdict to sustain the judgment is raised for the first time in this court. It is now urged that the verdict is not responsive, and is too indefinite and uncertain to sustain the judgment rendered.

By section 5926, Rev. Laws 1910, it is provided:

"If the jury render a verdict not in form, the court may, with proper instructions as to the law, direct them to reconsider it, and it cannot be recorded until it be rendered in some form from which it can be clearly understood what is the intent of the jury."

By section 5927 it is, among other things, provided:

" * * * But no judgment of conviction can be given unless the jury expressly find against the defendant, upon the issue."

The verdict is not in proper form, but when considered in connection with the charge in the information and the instructions given by the court, it is sufficiently

definite and certain as to the offense of which the defendant was convicted, and is in fact a verdict of guilty of assault with a dangerous weapon with intent to do bodily harm.

It is well settled that a verdict will not be held void for uncertainty if its meaning can be determined by reference to the record proper. *Bowlegs v. State*, 9 Okla. Cr. 69, 130 Pac. 824; *Walker v. State*, 11 Okla. Cr. 339, 127 Pac. 896.

Says Mr. Bishop:

"The language of the verdict,—being that of 'lay people,' need not follow the strict rules of pleading, or be otherwise technical. Whatever conveys the idea to the common understanding will suffice and all fair intendments will be made to support it." 1 Bish. New Cr. Proc. (4th Ed.), sec. 1005.

While the verdict is defective, its language expresses the intention and purpose of the jury to find the defendant guilty of assault with a dangerous weapon with intent to do "bodily harm as charged in the information herein," and the defendant should have objected to the verdict when returned, which would have called the attention of the court to its defective form and given opportunity for its correction, and, having failed to do this, the defendant waived the defects in the form of the verdict.

After a careful consideration of the record in this case, we are fully convinced that the defendant had a fair trial. The judgment of the lower court is therefore affirmed.

ARMSTRONG and MATSON, JJ., concur.