## BARBER BARD v. STATE.

No. A-3736.    Opinion Filed May 3, 1923.
(214 Pac. 939.)

(Syllabus.)

1. **Homicide—Evidence to Sustain Conviction for Assault with Intent to Kill.** Evidence reviewed, and held sufficient to sustain a conviction of shooting another with intent to kill.

2. **Indictment and Information—Sufficiency of Information.** An information is sufficient which states the offense clearly and distinctly in ordinary and concise language without repetition, in such manner as to enable a person of common understanding to know what is intended.

3. **Homicide—Information for Shooting with Intent to Kill—Sufficiency.** For information held sufficient to charge the offense of assault with intent to kill by shooting another, see opinion.

4. **Same—Plea of Self-Defense not Invocable by Aggressor.** One who seeks and brings on an affray cannot shield himself under a plea of self-defense.

5. **Same—Error in Instructions on Self-Defense not Prejudicial.** Error, if any, in instructions defining the law of self-defense could not be prejudicial to the defendant, where the evidence did not warrant instructions on self-defense.

6.      **Same—Charge on Included Offense—Sufficiency of Verdict.** On an information under Penal Code, first clause (section 1756, Comp. St. 1921), for shooting another with a shotgun with intent to kill, where the instructions of the court submitted the included offense of 'shooting another with intent to do bodily harm, but without intent to kill, as defined by second clause of section 1764, Comp. St. 1921, the verdict was: "We the jury,   *   *   * find the defendant guilty of assault with intent to kill as charged in the information herein, and assess his punishment at imprisonment in the state penitentiary for six years." Held, that the verdict is sufficiently definite and certain as to the offense of which defendant was convicted, and is in effect a verdict of guilty of shooting another with intent to kill.

Appeal from District Court, Rogers County; C. W. Mason, Judge.

Barber Bard was convicted of an assault with intent to kill, and he brings error. Affirmed.

Jennings & Hall and James S. Davenport, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

DOYLE, J.   The plaintiff in error was tried and convicted upon an information which, omitting formal parts, charges:

"That on the 17th day of February, A. D. 1919, in the county of Rogers, state of Oklahoma, one Barber Bard, then and there being, did then and there willfully, unlawfully, and feloniously commit the crime of an assault and battery with intent to kill in the following manner and form, to wit, that is to say:   The said Barber Bard, on said date and in said county and state then and there being, did then and there willfully, unlawfully, feloniously, and without authority of law, and with intent to kill one Zilmon D. Adams, make an assault with a certain double-barrel shotgun then and there loaded with gunpowder and leaden balls, and then and there had and held in the hands of him, the said Barber Bard, and did then and there with the said double-barrel shotgun so had

and held as aforesaid, willfully, unlawfully, wrongfully, intentionally, feloniously, and with intent to kill him, the said Zilmon D. Adams, fire, shoot off, and discharge said leaden balls out of said shotgun at, against, and into the body, person and right side of the face and left arm and side of him, the said Zilmon D. Adams, with the felonious intent then and there on the part of him, the said Barbar Bard, to kill the said Zilmon D. Adams, contrary to,'' etc.

The verdict reads:

''We, the jury drawn, impaneled, and sworn in the above-entitled cause, do upon our oaths find the defendant, Barber Bard, guilty of assault with intent to kill as charged in the information herein, and assess his punishment at imprisonment in the state penitentiary for six years.''

He has appealed from the judgment rendered upon such conviction.

The evidence for the state, briefly stated, was as follows:

The complaining witness, Adams, testified:

''I live 10 miles southwest of Chelsea. On the 17th day of February, 1919, I was harrowing for Mr. Strange. I saw the defendant coming west on the section line. I was going east in the field. He was horseback, and followed me around to the north end of the field. My brother, Homer, was harrowing behind me, and Frank Strange was harrowing near me. He rode up and said, 'Howdy do.' I asked him when he got back from camp. He told me. Then said I had herd-lawed a bunch of cattle and he had come over to see about it. I told him the cattle were running on the wheat every day. Then he wanted to know what right I had to slap his father. I told him, and he said, 'I will just take it up right now.' I told him I did not want to have any trouble. He got down off his horse and said, 'We will settle it right here.' He made a pass at me, and we had a scrap with our fists. Then he caught his horse and rode home, which was about half a mile away. It was evening, and I had started to go

to the house, when he came back carrying a gun. He rode into the field, checked his horse, and said, 'Have you got anything to say?' and shot me. The load struck me in the left elbow and side, and I fell. Then he fired a second shot, which took effect in my right shoulder and face, and one shot penetrated my right eye; I don't remember anything after the second shot was fired.''

Frank Strange testified:

''I was in the field where Zilmon and Homer Adams were harrowing. The defendant rode in from the section line and had a fist fight with Zilmon Adams. Then he caught his horse and rode home. I saw him riding back as fast as the horse could run. He rode into the field. I was standing within 5 feet of Zilmon Adams when he rode up. He stopped about 12 steps from Zilmon Adams and asked him if he had anything to say. Then he shot him. Adams fell, and he shot Adams again. Then he reloaded his gun and said, 'Take the cowardly son of a bitch to the house,' and rode off.''

Major Taylor testified:

''Between 5 and 6 o'clock that evening I saw the defendant coming into the field where Zilmon and Homer Adams were working. I saw there was a fight, so I started down. About the time I got there they were through. The defendant caught his horse and rode as fast as he could go to his father's house. Pretty soon I saw him coming back, riding as hard as he could, and he had a shotgun. He rode into the field, stopped, and asked Zilmon if he had anything to say. Zilmon said, 'No.' Then he shot him. After Zilmon fell, he shot him again. He reloaded his gun and said, 'Take the cowardly son of a bitch to the house,' and rode off.''

Dr. W. A. Howard testified:

''I was called to attend Zilmon Adams. I found gunshot wounds in the right side of his head and face and the upper shoulder and in his left arm and left side of the body. One shot penetrated the right eye, destroying the vision.''

Barber Bard, as a witness in his own behalf, testified:

"My age is 28. Zilmon Adams worked for me seven years. I got home from the training camp February 13th, and on February 17th I went into the field where Zilmon Adams was harrowing to see him in reference to the house he was living in on our place. His mother and I had staked this boy to a wheat crop, and he had rented some ground from another party, and I was to furnish the seed. He brought the seed back and said that Mr. Strange had put up the wheat to seed this ground. I asked him for the possession of theh house. He told me he would not give it unless he was put out according to law. One word brought on another. I told him that it looked like he had been trying to run over my father, and he said, 'Well maybe you want to take it up,' and asked me to get off my horse. I said, 'All right.' He jumped on me, and we had a fight. I got up, and he asked me if I had enough. I told him I never had said so, and he made a pass to hit me. I said, 'I will see you later; I am coming back.' So I went home. Then I came back and asked him if he had anything to say. He threw his hand back like that, and I shot him. I judge I was 30 yards from him when I fired the shots. His brother, Homer, Frank Strange, and Major Taylor were there at the time."

The assignments of error are as follows: Erro rin over-ruling the demurrer to the information; error in instructing the jury on the law of self-defense; and that the conviction is not sustained by sufficient evidence.

The objections stated by counsel for plaintiff in error in their brief is that it is difficult to tell under which provision of the statute the information was drawn, and that it partly charges two separate and distinct offenses.

The information was based on section 1756, Comp. Stats. 1921, which reads:

"Any person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another, with any kind of

firearm, air gun or other means whatever, with intent to kill any person, or who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death or in resisting the execution of any legal process, is punishable by imprisonment in the penitentiary not exceeding ten years.''

By numerous decisions of this court it is held that an information is sufficient to charge the offense of shooting another with intent to kill when the character of the firearm is designated, the manner of using it, the intent with which the act is done, and the person against whom the act is directed are alleged in ordinary and concise language. Deen v. State, 7 Okla. Cr. 150, 122 Pac. 941; Simmons v. State, 15 Okla. Cr. 442, 177 Pac. 626.

The information in this case charges but one offense, that is, shooting another with intent to kill; it is not duplicitous, and does not tend to mislead the defendant as to the offense charged; therefore the trial court very properly overruled the demurrer thereto.

It is also contended that the court erred in the instructions defining the law of self-defense. The error, if any, was harmless, for the reason that the evidence in the case did not justify an instruction upon self-defense. There was no evidence tending in the remotest degree to prove that the defendant was at the time of the shooting in any apparent imminent danger. When we consider the rule as what defendant testifies to against his interest is to be taken as true, there is no evidence to show that the defendant acted in self-defense when he made the assault. One who seeks and brings on an affray cannot shield himself under the plea of self-defense. The facts as testified to by the defendant as a witness on his own behalf afford no justification for his assault.

It is contended that the evidence is insufficient to sustain the verdict in that there is no proof of a felonious intent to kill. In our opinion, the manner of the attack, the weapon used, and wounds inflicted were such that the jury were fully authorized to infer that the shooting was with intent to kill.

Finally, it is insisted that the verdict of the jury is insufficient to sustain the judgment. The court instructed the jury that they might upon the information find the defendant guilty of the offense charged, or of the included offense of assault by shooting another without intent to kill, but with intent to do bodily harm, and that, if hey found the defendant guilty of the offense charged, it would be their duty to assess the punishment by imprisonment in the penitentiary for a definite period of time not exceeding 10 years, and, if they should find him guilty of shooting another without intent to kill, but with intent to do bodily harm, then it would be their duty to assess the punishment by imprisonment in the penitentiary for a definite peiod of time not exceeding 5 years, or by imprisonment in the county jail not exceeding one year.

While the verdict is technically informal, yet, when considered in connection with the offense charged in the informattion, the instructions given by the court, and the punishment assessed, it is sufficiently definite and certain as to the offense of which the defendant was convicted and is in effect a verdict of guilty of assault with intent to kill by shooting another with a shotgun. It is well settled that a verdict will not be held void for uncertainty if its meaning can be determined by reference to the record proper. Bowlegs v. State, 9 Okla. Cr. 69, 130 Pac. 824; Walker v. State, 11 Okla. Cr. 339, 127 Pac. 896; Simmons v. State, 15 Okla. Cr. 442, 177 Pac. 626; Coleman v. State, 16 Okla. Cr. 579, 194 Pac. 282; Pruitt v. State, 17 Okla. Cr. 434, 190 Pac. 894.

Says Mr. Bishop:

"The language of the verdict, being that of 'lay people,' need not follow the strict rules of pleading, or be otherwise technical. Whatever conveys the idea to the common understanding will suffice, and all fair intendments will be made to support it." I Bish. New Cr. Proc. (4th Ed.) § 1005.

A careful examination of the record fails to disclose any error affecting a substantial right, and we have no doubt that the verdict of the jury is, upon the testimony, a just one.

The judgment of the trial court is therefore affirmed.

MATSON, P. J., and BESSEY, J., concur.