BUSTER LEE GIBSON et al. v. STATE.

No. A-10976.     April 27, 1949.

(206 P. 2d 238.)

Owen F. Renegar, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Warren H. Edwards, Co. Atty., of Oklahoma City, for defendant in error.

BAREFOOT, J.  Buster Lee Gibson and Amos Cecil Zeigler were charged in the district court of Oklahoma county with the crime of larceny by fraud; were tried, found guilty by a jury, and their punishment fixed by the court at five years each in the State Penitentiary. From the judgments and sentences rendered, the defendants have appealed.

The state offered the testimony of three witnesses. The prosecuting witness, Carlton Amos Stice, 22 years of age, testified that he arrived in Oklahoma City from St. Louis, Mo., where he had been working, about 7:30 on the morning of August 1, 1946, on his way to his home

in Marietta, Okla. He had $330 in his shoe. He had about one hour to wait on his bus to Marietta, had been up the greater part of two nights, and went to sleep on a bench in the Union Bus Station. He had only been asleep a few minutes when the defendant Buster Lee Gibson awoke him, and engaged him in conversation. Gibson, who introduced himself as Jimmy Hodges, told witness that he was from Dallas, and was going out on the same bus as the witness. He then invited the witness to go up the street with him for a cup of coffee and the witness accepted his invitation. They had walked about three blocks from the bus station when the defendant Zeigler walked up behind them and asked about a hotel. He told them he was from Arkansas, had $400 and wanted to go out and have a good time. Witness had never seen either of the defendants before. Zeigler suggested that they match money, and witness told them he did not know anything about matching. Gibson urged the witness to go ahead and match, assuring him, out of the hearing of Zeigler, that if he lost, he, Gibson, would tell Zeigler that Gibson owed the witness, and witness could not lose any money. Witness agreed, and they matched for one dollar on two occasions, and Gibson won the money each time. They then matched for $10 twice, and Gibson again won each time, but witness was not called upon to pay anything to Gibson at any time. Zeigler then offered to match "all he had," claiming he had about $400. Gibson urged witness to: "Come on, we will win some money now. You won't have to pay anything. I will tell you what, I will tell him that if you lose—I will tell him that you have been working for me, and in that way, you won't have to pay any money." They matched, and Gibson again won, and Zeigler told the witness to pay Gibson or he would call the officers. Witness took his money out of his shoe

and gave it to Gibson, expecting to get it back, but Zeigler made him leave the scene. Witness left, and in a short time found an officer and reported the transaction. The officer took witness in his car and they found the two defendants together, a few blocks away, trying to hail a taxicab. The defendant Gibson had the money, and when the officer and Stice got out of the police car, Gibson attempted to put the money in Stice's pocket and the officer took possession of the same. Zeigler started to run, but was stopped by the officer. They were all three taken to the police station, and the $330 held by the officers and introduced in evidence. Zeigler, when searched, had about $80.

Two police officers testified for the state. Howard O. Hilbert, a detective, and who had been with the police department 14 years, testified that he was driving down the street near the Union Bus Station and saw the defendant Zeigler standing on the corner. He then saw Gibson and the prosecuting witness, and recognized Gibson. He turned around as soon as he could and went back to make an investigation. As he neared the place where he had seen Gibson and Stice, he was stopped by Stice, who told him his story. Hilbert took Stice in his car, and a few blocks away they found the two defendants out in the street, trying to stop a taxicab.

The other detective who testified was at the police station when the three were brought in, and identified the defendants and witness, and the envelope in which the $330 was placed.

The defendants offered no testimony whatever.

As stated in the brief of the state, counsel for defendants does not in his brief refer to any specific assignment of error, but apparently devotes his argument to

assignments 2 and 7 of the petition in error, which are as follows:

"2. Said court erred in overruling demurrer to the information."

"7. Said court erred in the proceedings wherein these plaintiffs-in-error were tried under a purported charge, to-wit: 'Larceny by fraud', which purported charge does not exist, and is not defined and set forth in the statutes of this state."

In his brief, counsel for defendants state that "our first contention is that no crime as provided by statute was charged in the information and that is a fatal error"; and: "we finally submit that the verdicts in this case do not mean anything and are totally inadequate."

A greater part of defendants' brief is addressed to the proposition that there is no such crime in the statutes of Oklahoma as "larceny by fraud." Counsel quotes sections 1701 and 1703 of Title 21 O.S. 1941, in which larceny, and the degrees of larceny are filed. These sections are:

"Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof."

"Larceny is divided into two degrees; the first of which is termed grand larceny, the second petit larceny."

We cannot agree with defendants' contention that the crime of larceny by fraud "does not exist and is not defined and set forth in the statutes of this state."

The statute plainly states that larceny may be accomplished by fraud or stealth, and the fact that the name given to the crime in the information was more specific than was necessary does not vitiate the information. The information here specifically charges the defendants with

fraudulently and feloniously taking $330 in good and lawful money of the United States from the true owner, Carlton Amos Stice, "with the unlawful, wilful, fraudulent and felonious intent then and there of them, the said defendants, to deprive the said Carlton Amos Stice permanently thereof, and to convert the same to their own use and benefit."

In the early case of Bivens v. State, 6 Okla. Cr. 521, 120 P. 1033, this court held:

"Where in an indictment for larceny the property is charged to have been taken by fraud, it is not necessary to set out the fraudulent acts relied upon as constituting the fraud."

And in the body of the opinion, Judge Doyle says:

"We think the information sufficiently charges the crime of larceny by fraud."

In Ennis v. State, 13 Okla. Cr. 675, 167 P. 229, L. R. A. 1918A, 312, the court said:

"To constitute 'larceny by fraud' the allegations in the information must set out and the facts disclosed at the trial must show the existence of a fraudulent purpose and intent upon the part of the taker to appropriate the property to his own use and deprive the owner thereof at the time the same comes into his possession, and that fraudulent representations were made to the owner to induce him to part with the possession of the property."

Considering all of the facts and circumstances surrounding the taking of the money by the defendants from the owner, they are sufficient to show the felonious intent of the defendants at the time of the taking, and that it was taken by fraud, with the design then entertained to deprive the owner thereof.

In Welch v. State, 78 Okla. Cr. 180, 146 P. 2d 141, 145, this court said:

"We have in this state a statute which makes larceny by fraud a crime. It is Tit. 21 O.S.A. 1941 § 1701."

See, also, Riley v. State, 64 Okla. Cr. 183, 78 P. 2d 712, 713, and Dobson v. State, 74 Okla. Cr. 341, 126 P. 2d 95.

It is our opinion that the court did not err in overruling the demurrer to the information.

Defendants complain that the verdicts rendered in this case "do not mean anything and are totally inadequate." We do not think this contention of counsel is tenable. The appellants were jointly charged, prosecuted and tried together; the court fully instructed the jury as to the charge against the defendants and as to larceny, giving the statutory definitions of grand and petit larceny; and further instructing them on larceny by fraud as defined by this court many times. The jury returned a verdict as to the defendant Gibson as follows:

"We the jury empaneled and sworn in the above entitled cause do upon our oaths, find the defendant Buster Lee Gibson guilty and leave his punishment to be fixed by the court."

An identical verdict was returned against the defendant Amos Cecil Zeigler.

In Fowler v. State, 26 Okla. Cr. 170, 223 P. 206, 207, this court held:

"Failure of a verdict to name the offense of which the jury found the defendant guilty does not invalidate it, if from its language, as a whole, no doubt can arise as to the offense of which he was convicted."

Citing Bowlegs v. State, 9 Okla. Cr. 69, 130 P. 824. See, also, Love v. State, 12 Okla. Cr. 1, 150 P. 913; Nance

v. State, 43 Okla. Cr. 247, 278 P. 357; Medley v. State, 81 Okla. Cr. 242, 162 P. 2d 881, and cases cited.

We think the defect here is not sufficient to affect the substantial rights of the defendants. They were present, their counsel was there, and these verdicts were read, and read in their hearing, and no objection made. This court, in Coleman v. State, 16 Okla. Cr. 579, 194 P. 282, held that a verdict, defective in form, but which expressed the intention and purpose of the jury, should have been objected to when returned, and thereby the attention of the court called to its defective form, and an opportunity given for its correction. This decision has been followed since that early case.

In Medley v. State, supra, this court held [81 Okla. Cr. 242, 162 P. 2d 882]:

"The language of the verdict, being that of 'lay people,' need not follow the strict rules of pleading, or be otherwise technical. Whatever conveys the idea to the common understanding will suffice, and all fair intendments will be made to support it."

And:

"Strict technical rules of construction should never be applied to the verdict of a jury. Their verdict should receive a commonsense construction, and, if it is possible to arrive at the intent and purpose of the jury, the verdict should be upheld."

From the entire record, we think the verdicts of the jury are sufficiently definite and certain as to the offense of which the defendants were convicted, and that they are, in fact, verdicts of guilty of larceny by fraud. There is nothing in the record to raise a reasonable doubt upon this question.

Our conclusion is that the defendants had a fair, impartial and legal trial, and the judgments of conviction

are manifestly just. The judgment of the district court of Oklahoma county is, therefore, affirmed.

JONES, P. J., and BRETT, J., concur.