FRED NIX v. STATE.

No. A-10443. May 9, 1945.

(158 P. 2d 726.)

266

W. L. Curtis, of Fort Smith, Ark., for plaintiff in error.

Randell S. Cobb, Atty. Gen., E. J. Broaddus, Asst. Atty. Gen., W. S. Agent, Co. Atty. of Sequoyah County, of Sallisaw, for defendant in error.

BAREFOOT, P. J.  Defendant Fred Nix was charged in the district court of Sequoyah county with the crime of larceny of livestock, to wit: one yearling; was tried, convicted, sentenced by the court to serve a term of three years in the State Penitentiary, and has appealed.

For reversal of this case, it is contended:

First, that the court erred in overruling the motion for continuance.

Second: "The court erred in permitting the county attorney to recall the witness, Homer Underwood, purportedly on rebuttal, for the reason that the testimony of said witness, if admissible at all, should have been called in connection with the state's case in chief, and for the further reason that after having once been called on the theory that he was only a rebuttal witness, he was recalled on two occasions thereafter, to all of which the plaintiff in error at the time excepted and caused his exceptions to be noted of record."

Third: "The court erred in sustaining an objection on the part of the state to the testimony of C. B. Sanders with reference to a conversation purported to have been had by this witness with Homer Underwood, who was jointly informed against in this action with the defendant, said conversation being with reference to the calf which this defendant was alleged to have stolen, to which action of the court the plaintiff in error, at the time excepted and caused his exceptions to be noted of record."

Fourth, that the verdict of the jury is contrary to the law and the evidence.

The motion for continuance was based upon the absence of two witnesses, Earl Edwards and Athel Riddle.

We deem it unnecessary to give a lengthy statement as to this contention, and to the purported evidence of these witnesses. We have given this motion careful consideration, and find that the court did not abuse its discretion in overruling the same. Both of these witnesses were in the Army, but had both been back in Sequoyah county for ten days just prior to the trial, and no effort had been made by defendant or his attorney to take the deposition of these witnesses. The testimony which it is alleged these witnesses would have given was not such as would change the result of this trial, or prejudice his rights. There was no allegation as to when either of the witnesses could be produced to testify. The defendant contends that he was employed in Kansas City in defense work, and was therefore unable to prepare his case for trial. His lawyer could have made the necessary preparation in his absence. We find nothing in the record that would cause us to hold that the court abused its discretion in overruling the motion for continuance. Jackson v. State, 77 Okla. Cr. 60, 140 P. 2d 606; McKendree v. State, 78 Okla. Cr. 321, 148 P. 2d 210.

As to the second contention, the evidence of the witness Homer Underwood was clearly rebuttal testimony, as it rebutted the testimony of the defendant. The fact of his being twice called to the witness stand on rebuttal did not alter the situation. Pulliam v. State, 61 Okla. Cr. 18, 65 P. 2d 426; Waldrep v. State, 74 Okla. Cr. 438, 127 P. 2d 860.

As to the third assignment of error, C. B. Sanders, a surety on defendant's bond, testified that about two days before defendant was arrested Homer Underwood, the codefendant and from whom defendant testified he purchased the calf, approached him and wanted to leave a calf fitting the description of the one stolen at his place until he could sell it, or could get a truck to haul it, and offered to pay Sanders $10 for the privilege. The court would not permit the witness to give details of the conversation with Underwood, and the defendant excepted to the ruling of the court. The undisputed facts were that the crime was committed on February 9, 1942. The calf was taken to the commission company pens at Moffett, Okla., on February 10th and was sold on the market on February 11, 1942. Defendant was arrested on February 18, 1942. The testimony of the witness Sanders was that Homer Underwood had talked to him two days prior to the arrest of Underwood and the defendant, trying to get him to let him put the calf in his pasture. This evidence just could not have been true, in the light of the admitted facts, and the court did not err in refusing to permit this witness to make a detailed statement thereof.

The fourth assignment of error, that the verdict of the jury is contrary to the law and the evidence and that the court erred in overruling the motion for new trial, cannot be sustained.

It is revealed by the record that Richard Huff was the owner of certain cattle which were being kept in the pasture of Bryce Randolph, in Sequoyah county. Among the cattle was the yearling in question, which was missed by the owners soon after its disappearance from the pasture. Upon investigation it was found where the calf had been loaded into a truck, and where it had been sold. Homer Underwood, the codefendant, lived in the pasture with a woman by the name of Mary Black. The calf was sold by defendant through a commission company at Moffett, in Sequoyah county, Okla., to Harrison Cotner, of near Booneville, Ark., for the sum of $28.43. The calf was later found in his possession, identified as the property of Richard Huff, and returned to him. Defendant admitted that he hauled the calf to Moffett in his truck, and that he sold the same. He directed how the checks should be made for the payment of the calf. A check for $3.50 was issued to Homer Blackard to cover a draft drawn on the commission company by the defendant, a check for $21.50 was issued to Homer Underwood, and the remainder of the sale price was used to cover commissions, feed bills, and to apply on the defendant's account with the commission company. The defendant assisted Underwood in getting the check cashed, and endorsed Underwood's name on the check, and also endorsed it himself. He cashed the check at Earl Edward's place of business. He knew Edwards, but Underwood did not. There was some conflict in the evidence as to whether Underwood was present at the time the check was cashed; whether Underwood directed the defendant to sign his name on the back of the check, and whether Underwood was able to write.

The defendant and Underwood were seen loading the calf in the truck by two disinterested witnesses, Jess Gann

and Elmer Cauthern, who were hauling wood for a Mr. Kendrick. They reported the incident to Mr. Kendrick, and went with him in his car to near where the calf had been loaded. They stopped the truck, and the defendant told them he had bought the calf from a man named George Denny for $25, and that it had jumped out of the truck over on the highway, and defendant had asked his codefendant, Underwood, to help him catch and reload it. Underwood got out of the truck, and defendant asked him in their presence how much he owed him, and Underwood said 50 cents. Defendant told Underwood he did not have any change, but would leave the money at Butler's filling station, and drove on alone in the truck with the calf.

On February 12, 1942, the sheriff of Sequoyah county, Raymond P. Drake, and Bryce Randolph and his son, who had been taking care of the calf for the owner, went to the stockyards at Moffett and saw the defendant, and the sheriff asked him where he got the heifer he sold the preceding day. The defendant told him he got it from Charley Toon, near Marble City. Upon being confronted with the sales slips of cattle that had been sold by defendant on the market, he stated that he had bought the calf from Homer Underwood, and gave as a reason for not telling about it at first that the calf belonged to Mary Black, who was living with Homer Underwood. That the calf had been given to Mary Black by Joe Taylor, and that Underwood did not want her to know he had sold her calf. Defendant testified that he purchased the calf from his codefendant Underwood for $25. It is unnecessary to detail his testimony. He admitted getting the calf and hauling it to the market in his truck, and selling the same. Underwood did not accompany him in the

truck. Other evidence was offered, but it is unnecessary to refer to the same.

From the above, it may be clearly seen that the evidence was sufficient to sustain the verdict, and the judgment and sentence imposed. It was clearly a question for the determination of the jury, and we find no reason for setting aside their verdict.

For the reasons stated, the judgment of the district court of Sequoyah county is affirmed.

JONES, J., concurs. DOYLE, J., not participating.