# GEORGE SMITH v. STATE.

No. A-10497.   Jan. 16, 1946.
Concurring Opinion March 11, 1946.
(165 P. 2d 381; 167 P. 2d 83.)

Amos T. Hall, of Tulsa, and James K. Eaton, of Oklahoma City, for plaintiff in error.

Randell S. Cobb. Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and L. A. Wallace, Co. Atty., of Okmulgee, for defendant in error.

BAREFOOT, J. Defendant, George Smith, was charged in the district court of Okmulgee county with the crime of maiming, was tried, convicted and sentenced to serve seven years in the State Penitentiary, and has appealed.

It is charged that on June 21, 1943, the defendant struck one H. O. Crane across the face with a whisky bottle, which disfigured the personal appearance of the said H. O. Crane, and destroyed the sight of his right eye.

A preliminary was had on June 29, 1943, at which time defendant was held to the district court, and information filed on the same date, charging him as above stated. On August 9, 1943, defendant was arraigned; and the case was assigned for trial on August 23, 1943.

On the date of the trial, August 23, 1943, defendant, who is a negro, filed an affidavit for continuance on the ground that he could not proceed to trial without the testimony of two witnesses, whom he alleged to be in

the Army. In his affidavit, he set out what he claimed would be the testimony of the two witnesses. There was a hearing on this motion, at which time testimony was offered, and the county attorney agreed that the affidavit made by the defendant might be read to the jury as the deposition of the two absent witnesses. The motion for continuance was overruled, and the case proceeded to trial.

Defendant sets out eleven assignments of error, but argues only four of them, in the following order:

"Assignment of error No. 7. Error of the court in overruling the motion for continuance on behalf of the defendant and excepted to by the defendant.

"Assignment of Error No. Nine: Error of the court in permitting the jury to ask questions and interrogate the defendant upon matters which were highly prejudicial to the rights of the defendant, and which was duly excepted to by the defendant.

"Assignment of Error No. Eight: Error of the County Attorney making highly prejudicial remarks to the rights of the defendant and excepted to by the defendant.

"Assignment of Error No. Two: That the verdict of the jury is contrary to law."

The complaining witness, H. O. Crane, testified about as follows: He boarded a Santa Fe bus at Muskogee, Okla., about 1 o'clock in the morning of June 21, 1943. He was a pipefitter by trade, and was going to Okmulgee to work on the hospital there. Before the bus left Muskogee, the driver asked the defendant to move from where he was sitting to the compartment reserved for colored people and defendant refused to do so. The bus driver got off and brought two military police, who tried to persuade defendant to move "back where he belonged."

Defendant refused to move, informing them that he had been discharged from the Army, and, "it was out of their jurisdiction." The military police left the bus and returned with an officer, who told the defendant that so long as he was wearing the uniform, he would have to obey orders. Defendant then moved to the rear without any further trouble. Witness did not say anything to defendant, and defendant said nothing to him. Witness was sitting about two-thirds of the way back in the bus, and when they reached Boynton he got off, and when he returned, sat down in the front seat to the right of the driver, and next to the aisle. He had gone to sleep before the bus reached Okmulgee about 2 o'clock, and was leaning back in his seat. The first thing he knew, defendant hit him in the face with a bottle. He suffered the loss of his right eye, his left eye was injured, his nose broken, and the nerves around the eye and face were injured. He denied that he made any remark to the driver about putting the defendant in his place, or keeping him there.

Dr. Geo. L. Tracewell testified that he attended the prosecuting witness about 2:30 on the morning of June 21, 1943, and that he was still under observation. That Mr. Crane was in the hospital 31 days. When he was first called, Mr. Crane had a laceration of both eyeballs, and the laceration extended from the right eyeball to two inches across the nose, and across his right cheek. That he was totally blind in the right eye except for light perception, and he considered it a permanent loss; that he had 10 per cent vision in the left eye and 25 per cent with the aid of a glass. There were no injuries to the eyelids.

Juanita Action testified: She was on the bus at the time of the difficulty, occupying the third seat back,

on the left. The first time she observed the defendant was when the bus driver asked him to move back. Defendant was in the third or fourth seat from the rear, and she did not notice anyone in the seat with him. She testified about the military police coming on the bus, and the defendant moving back, and that when he did move she heard him remark: "I will get even with you." She did not know whether he addressed the bus driver or Mr. Crane. She did not hear Mr. Crane say anything to the defendant. The bus stopped east of the Frisco tracks at Okmulgee, and two colored boys got off before the defendant started to move. He then came quickly, and as he went out of the bus, turned and struck Mr. Crane across the face with a bottle. Part of the glass fell on her, and she had one slight cut, testifying: "he broke the bottle with such force it broke into a thousand pieces. Mr. Crane was not able to see anything after he hit him, blood streaming down his face." She did not hear Mr. Crane speak a word during the difficulty between the bus driver, the military police and the defendant. Mr. Crane was seated when the defendant passed him, got as far out as the step, came back and struck him just as he started to leave the bus.

Ramona Howell testified that she was on the bus, sitting just behind Mr. Crane, as they reached Okmulgee. She saw the defendant strike Mr. Crane in the face, and she did not see Mr. Crane make any demonstration toward defendant at any time, and did not hear him say anything to him.

Howard Reckhon, a painter, testified that he was on the bus, when defendant got on and crawled over a white soldier and took the seat next to the window. The white soldier got up and moved and the bus driver went

back and asked the defendant to move to the rear of the bus. That the prosecuting witness told the bus driver, "Let me help you move him back there," but the bus driver took witness by the arm and made him sit down, and went for the military police. He saw the defendant strike the prosecuting witness with the whisky bottle. Mr. Crane said nothing to defendant, and had made no demonstration toward him.

Defendant testified in his own behalf, produced three character witnesses, two ministers and the principal of his school, and offered the affidavit as set out in the motion for continuance, as the deposition of the two witnesses who were in the army.

These two witnesses were colored boys and were on the bus when defendant entered. The affidavit recites that they would testify that defendant stopped at a seat occupied by a white soldier and asked permission to occupy the seat by him and next to the window, and the soldier answered, "Sure Buddy, sit down." Defendant told the soldier that he was sick and would be more comfortable in the reclining seat next to the window than in the rear. The bus driver asked defendant to move and he refused. The bus driver got the military police and they in turn brought in an officer, and defendant complied with the request of the officer to move to the rear. After the officers left the bus, the bus driver went to the rear and told defendant to stay in that section of the bus, or he would be required to put him off the bus, and that when he did, "a large white man whose name is unknown to the witnesses, threateningly arose from his seat and saying, quote: 'By golly you don't have to tell him to stay back there, I will keep him back there.'" They left the bus before the defendant, and turned to see him

get off the bus, and as he approached the seat where the white man was sitting, on the front seat, he commenced to rise from his seat and at the same time mumbling something to the defendant. He had his hand in his pocket and was removing his hand from the right pocket of his trousers when the defendant struck him with the bottle.

The testimony of the defendant was practically the same as that set out in his affidavit as the testimony of the two absent witnesses.

It will thus be noted that there is some conflict in the testimony as to just what the prosecuting witness said and did, but this was a question for the jury. The evidence offered by the state was amply sufficient to sustain the judgment and sentence. LeFavour v. State, 77 Okla. Cr. 383, 142 P. 2d 132; Grooms v. State, 77 Okla. Cr. 448, 142 P. 2d 862; Butler v. State, 78 Okla. Cr. 133, 145 P. 2d 215; Salisbury v. State, 80 Okla. Cr. 13, 156 P. 2d 149.

We have carefully examined the record with reference to the assignment of error that the court erred in overruling the motion for continuance.

In the opinion of the court, the affidavit did not show due diligence. The two witnesses left Okmulgee county only a short time prior to the date an attempt was made to subpoena them. They were in the Army, and located in different camps in other states. Nothing was shown that would cause the court to believe this evidence could be secured at a future date. The court permitted the affidavit made by defendant to be read to the jury. This affidavit set out what their evidence would be, and no doubt was stated as strongly as the witnesses would have testified, had they been present.

It has often been held by this court that the question of granting a continuance is within the sound discretion of the trial court, and that unless there is an abuse of this discretion, the ruling will not be set aside. Jackson v. State, 77 Okla. Cr. 160, 140 P. 2d 606; McKendree v. State, 78 Okla. Cr. 321, 148 P. 2d 210; Nix v. State, 80 Okla. Cr. 265, 158 P. 2d 726.

The next assignment of error is that the court erred in permitting a juror to ask a question while defendant was on the witness stand.

The question had reference to the kind of discharge defendant received at the time he was released from the Army. The court, at the instance of the defendant, permitted the discharge to be introduced. It was neither an honorable nor a dishonorable discharge; but was issued under certain provisions of the regulations, which witnesses testified was for "inaptitude," and as not being recommended for reinstatement.

We recognize the rule that the court should be careful in permitting the jurors to ask questions, for the reason that incompetent and prejudicial evidence may be brought before the jury, but we do not believe the questions asked in this instance were prejudicial to the rights of the defendant, as revealed by the record.

We have examined the record with reference to the assignment of error as to prejudicial remarks of the county attorney in his argument to the jury.

The argument of the county attorney was not taken by the court reporter up to the time objection was made. Counsel for defendant requested the county attorney to restate the argument he had made, and the county attorney declined to do so, giving as his reason that it had

been made in the heat of argument, and he did not recall just what he had said. Counsel for defendant then dictated the statement of the county attorney as he remembered it. The statement had reference to some other similar case the county attorney had prosecuted some 15 years prior to that time, and in which the defendant had been given the maximum punishment. After the statement was dictated by counsel for defendant, the court in the presence of the jury said:

"The objection is sustained. During the jury's deliberations in the juryroom, you are not to consider any statement made with reference to any other case, or what punishment might have been given. This is the only case for you to consider."

In view of this statement by the court, and a review of the record as a whole, we are of the opinion that the statement of the county attorney was not such as to require reversal or modification of the judgment rendered in this case.

In concluding his brief, counsel for defendant argues assignment of error No. 2, and states:

"The next error which we wish to urge was not discovered by us until we were about ready to close this brief. But may properly be discussed under the second assignment of error which is as follows: 'That the verdict of the jury is contrary to law.' "

Counsel then calls attention to the verdict of the jury, which reads:

'We, the jury, drawn, impaneled and sworn in the above entitled cause do upon our oaths find the defendant George Smith, guilty of maiming as charged in the information herein, and assess his punishment at imprisonment in the State Penitentiary, for Seven (7) * * *."

Counsel propounds the question:

"Did the jury intend to assess his punishment at seven years or seven months or seven days, or even seven hours?"

We think there was no doubt in the mind of the court, counsel, or even the defendant, that the jury intended to fix the punishment of defendant at seven years in the State Penitentiary. Counsel at the outset of his brief states that "defendant was convicted and by punishment by the jury assessed at a term of seven years in the State Penitentiary at McAlester."

This defendant was charged under 21 O. S. 1941 § 751, which is:

"Every person who, with premeditated design to injure another, inflicts upon his person any injury which disfigures his personal appearance or disables any member or organ of his body or seriously diminishes his physical vigor, is guilty of maiming."

Section 759 of the same Title prescribes the punishment for maiming:

"Every person guilty of maiming is punishable by imprisonment in the penitentiary not exceeding seven years, or by imprisonment in the county jail not exceeding one year, or by fine not exceeding one thousand dollars, or both such fine and imprisonment."

The court properly instructed the jury on the charge, and the punishment for the crime, his instruction being in the identical words of the statute.

In the consideration of a verdict, the first object is to ascertain what the jury intended to find; and this is to be done by construing the verdict liberally, with the sole view of ascertaining the meaning of the jury, and not under the technical rules of construction which are

applicable to pleadings. Walker v. State, 11 Okla. Cr. 339, 127 P. 895.

The jury found the defendant "guilty of maiming as charged in the information herein," and under 22 O. S. 1941 § 927, the court had the authority to assess the punishment of the defendant, even though the jury had not attempted to do so. Felice v. State, 18 Okla. Cr. 313, 194 P. 251.

Before a defendant can take advantage of uncertainty in a verdict, he must first object to the verdict in the trial court, and ask the court to require the jury to amend it. When this is not done, all reasonable intendments and inferences will be indulged to sustain it as to form. Harrell v. State, 43 Okla. Cr. 278, 278 P. 404. The verdict in this case was returned in open court. The verdict was read. Defendant and his counsel had the right to examine the same. No objection was made to the verdict, and the sufficiency of the same was not challenged in the motion for new trial, and no motion in arrest of judgment was filed. In the absence of such objection the defendant will be presumed to have waived any defect in the form of the verdict. It is only when the error committed is considered fundamental that relief will be granted. Coleman v. State, 16 Okla. Cr. 579, 194 P. 282; Pruitt v. State, 17 Okla. Cr. 434, 190 P. 894; Nelson v. State, 34 Okla. Cr. 187, 245 P. 1009; Nance v. State, 43 Okla. Cr. 247, 278 P. 357; People v. Chiappelone, 90 Cal. App. 472, 265 P. 976; Crump v. Commonwealth, 215 Ky. 827, 287 S. W. 23; Critchfield v. People, 91 Colo. 127, 13 P. 2d 270.

For the reasons above stated, the judgment of the district court of Okmulgee county is affirmed.

DOYLE, J., concurs. JONES, P. J., dissents.

JONES, P. J. (dissenting). I respectfully dissent because, as I view the record, the verdict rendered by the jury is too indefinite and uncertain to sustain the judgment pronounced against the defendant.

It is only when the jury does not attempt to fix the punishment in their verdict that the trial court may do so. 22 O. S. 1941 § 927.

Here, however, the jury attempted to fix the verdict. The punishment was not left to the court. In order for this conviction to be affirmed, this court must guess that the jury meant to fix the punishment at 7 years, as there is nothing on the face of the verdict to indicate that such was the intent of the jury. As the verdict is written, they could have meant 7 months, 7 weeks, 7 days, or even 7 hours, and still been within the limitations of the statute fixing the punishment for this offense. Suppose the jury had inserted the word "6" instead of "7". Would the trial court have been justified in fixing the punishment at 6 years instead of 6 months? What if they had inserted the figure "10?" Then, would it be said that they meant 10 months or 10 weeks? As I view the record, when this verdict was handed to the trial judge, and he read it, he should have handed it back to the foreman of the jury, advising them that it was indefinite as to form and sent them back to the jury room for further deliberation.

I do not think that, under the circumstances presented by this record, the failure of the attorney to raise the issue before the trial court is fatal to his appeal. We have many times held that the question of the lower court's lack of jurisdiction to render a particular judgment and sentence by which a person is imprisoned may be raised at any time, even by habeas corpus. Ex parte

Alton, 38 Okla. Cr. 383, 262 P. 215; Ex parte Hightower, 13 Okla. Cr. 472, 165 P. 624; Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139. In a habeas corpus proceeding, this court would examine the record to see whether the judgment and sentence was in conformity with the verdict. Ex parte Shockley, 75 Okla. Cr. 263, 130 P. 2d 331; Ex parte Harris, 8 Okla. Cr. 397, 128 P. 156.

In my view, if no appeal had been taken, the defendant would have been entitled to his release from confinement in the State Penitentiary by habeas corpus, on the ground that the judgment and sentence was void and contrary to the verdict of the jury and that the court was without jurisdiction to pronounce the sentence.

In the case of Wingfield v. State, 38 Okla. Cr. 435, 263 P. 158, it was held:

"A verdict finding the defendant guilty as charged in the information, and fixing his punishment 'at ———— or by the court,' is insufficient as to form, and is too vague and uncertain to support a judgment and sentence."

See, also, Rea v. State, 6 Okla. Cr. 366, 118 P. 815; Campbell v. State, 14 Okla. Cr. 319, 170 P. 915; George et al. v. State, 28 Okla. Cr. 388, 231 P. 318.

In Rea v. State, supra, this court stated:

"If the jury render a verdict not in form, the court may, with proper instructions as to the law, direct them to reconsider it, and it cannot be recorded until it be rendered in some form from which it can be clearly understood what is the intent of the jury."

I do not think counsel for defendant should be charged with laches in connection with this assignment of error. As he presents the matter, it is shown that at the time the jury handed their verdict to the trial judge, the judge read it and gave it to the court clerk

to read in open court. The court clerk in reading the verdict added the word "years" to it. Under such circumstances, one may easily see how the attorney for the defendant was misled and did not really know the indefinite nature of the verdict until he saw it as it appeared in the case-made.

Concurring Opinion, March 11, 1946.

. DOYLE, J. (concurring). The plaintiff in error, George Smith, hereinafter referred to as the defendant, was convicted of the crime of maiming and sentenced to a term of imprisonment in the State Penitentiary for 7 years.

The information charges:

"That the said George Smith, at and in Okmulgee County, on or about the 21st day of June, 1943, did unlawfully, wilfully and feloniously with a premeditated design to injure H. O. Crane, inflict upon his person injuries which disfigured his personal appearance and destroyed the sight of his right eye, by the said George Smith then and there striking the said H. O. Crane across the face with a certain glass whisky bottle, which he, the said George Smith, then and there had and held in his hand, in violation of the provisions of Title 21, Section 751, Oklahoma Statutes, 1941, contrary to" etc.

August 24, 1943, the case came on for trial and a jury was duly impaneled; August 25, the jury returned their verdict.

The record shows that the verdict rendered by the jury was received, read and recorded and that there was no objection made to the sufficiency of the verdict on the part of the defense, and no question as to its sufficiency was raised in the motion for new trial.

The minutes recite:

"Filed in the District Court August 25, 1943, case passed for sentence to August 28 at 10 o'clock and it was

ordered by the court that the defendant be permitted to stand on present appearance bond."

August 27, motion for new trial filed. August 28, upon overruling the defendant's motion for new trial, the court rendered judgment and sentenced the defendant to imprisonment in the State Penitentiary at McAlester for the term of seven years.

A careful examination of the whole case discloses no error to the prejudice of any substantial right of the defendant. However, counsel for the defendant contend and insist that the verdict is void for uncertainty and for this reason the judgment and sentence is void for want of jurisdiction.

In support of this contention, counsel in their brief say:

"The next error which we wish to urge was not discovered by us until we were about ready to close this brief. But may properly be discussed under the second assignment of error which is as follows:

" 'That the verdict of the jury is contrary to law.'

"We wish to call the attention of the court to page 215 of the case-made at which appears the verdict in this case, and omitting the caption, is as follows:

" 'We, the jury, drawn, impaneled and sworn in the above entitled cause do upon our oaths find the defendant George Smith, guilty of maiming * * * as charged in the Information herein, and assess his punishment at imprisonment in the State Penitentiary, for Seven (7) * * *.'

"The court will observe at once that the verdict is void on its face and did not confer upon the trial court the right or authority to render judgment thereon for the reason that the jury did not assess any punishment. Merely found the defendant guilty and assessed his pun-

ishment at imprisonment in the State penitentiary for Seven (7) * * *.

"Did the jury intend to assess his punishment at seven years or seven months or seven days, or even seven hours? There is nothing in the record to indicate the punishment assessed. It is true that the court entered judgment upon the verdict but there was certainly nothing in the record to justify the court in assuming that the jury intended to fix the punishment at seven years in the penitentiary. What authority did the court have for assuming that the jury meant seven years? It was purely speculation and conjecture on his part. The verdict is void and the court's judgment is void and as the cause now stands, the defendant has been sentenced to seven years in the penitentiary by the court upon a verdict which did not so assess his punishment.

"This court in the case of Wingfield v. State, 38 Okla. Cr. 435, 263 P. 158 held that: * * *

"Disregarding our other assignments of error, we seriously urge that under this assignment of error, the defendant is entitled to a reversal of this cause. Taking the case as a whole it is apparent that the defendant has not had a fair and impartial trial as guaranteed by the Constitution and we respectfully ask this court to reverse and remand this cause for a new trial."

The prosecution is based on Penal Code, 21 O. S. 1941 § 751, which provides:

"Every person who, with premeditated design to injure another, inflicts upon his person any injury which disfigures his personal appearance or disables any member or organ of his body or seriously diminishes his physical vigor, is guilty of maiming. R. L. 1910, § 2345."

Section 754 Id. provides:

"To constitute maiming it is immaterial by what means or instrument, or in what manner the injury was inflicted. R. L. 1910, § 2348."

Section 756 Id. provides:

"A design to injure, disfigure, or disable, is inferred from the fact of inflicting an injury which is calculated to disfigure or disable, unless the circumstances raise a reasonable doubt whether such design existed. R. L. 1910, § 2350."

Section 757 Id. provides:

"A premeditated design to injure, disfigure or disable, sufficient to constitute maiming, may be formed instantly before inflicting the wound. R. L. 1910, § 2351."

Section 758, Id. provides:

"Where it appears, upon a trial for maiming another person, that the person injured has, before the time of trial, so far recovered from the wound that he is no longer by it disfigured in personal appearance, or disabled in any member or organ of his body, or affected in physical vigor, no conviction for maiming shall be had; but the accused may be convicted of assault and battery, with or without a special intent, according to proof."

Section 759 Id. provides:

"Every person guilty of maiming is punishable by imprisonment in the penitentiary not exceeding seven years, or by imprisonment in the county jail not exceeding one year, or by fine not exceeding one thousand dollars, or both such fine and imprisonment."

The provisions of the Code of Criminal Procedure which have a bearing on the question, as will be seen by reference to the same, are as follows:

22 O. S. 1941 § 913, provides:

"When the jury appear, they must be asked, by the court or the clerk, whether they have agreed upon their verdict, and if the foreman answers in the affirmative, they must, on being required, declare the same."

Section 914, Id. provides:

"A general verdict upon a plea of not guilty, is either 'guilty,' or 'not guilty,' which imports a conviction or acquittal of the offense charged."

Section 915 Id. provides:

"Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty."

Section 919 Id. provides:

"If the jury render a verdict not in form, the court may, with proper instructions as to the law, direct them to reconsider it, and it cannot be recorded until it be rendered in some form from which it can be clearly understood what is the intent of the jury."

Section 922 Id. provides:

"When the verdict is given, and is such as the court may receive, the clerk must immediately record it in full upon the minutes, and must read it to the jury and inquire of them whether it is their verdict. If any juror disagree, the fact must be entered upon the minutes, and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury must be discharged from the case."

Section 926 Id. provides:

"In all cases of a verdict of conviction for any offense against any of the laws of the State of Oklahoma, the jury may, and shall upon the request of the defendant assess and declare the punishment in their verdict within the limitations fixed by law, and the court shall render a judgment according to such verdict, except as hereinafter provided."

Section 927 Id. provides:

"Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not de-

clare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly."

Section 928 Id. provides:

"If the jury assess a punishment, whether of imprisonment or fine, greater than the highest limit declared by law for the offense of which they convict the defendant, the court shall disregard the excess and pronounce sentence and render judgment according to the highest limit prescribed by law in the particular case."

In the dissenting opinion in this case it is said:

"I respectfully dissent because, as I view the record, the verdict rendered by the jury is too indefinite and uncertain to sustain the judgment pronounced against the defendant. It is only when the jury does not attempt to fix the punishment in their verdict that the trial court may do so. 22 O. S. 1941 § 927. * * *

"As the verdict is written, they could have meant 7 months, 7 weeks, 7 days, or even 7 hours, and still been within the limitations of the Statute fixing the punishment for this offense." * * *

"In my view, if no appeal had been taken, the defendant would have been entitled to his release from confinement in the State Penitentiary by habeas corpus, on the ground that the judgment and sentence was void and contrary to the verdict of the jury and that the court was without jurisdiction to pronounce the sentence.

"In the case of Wingfield v. State, 38 Okla. Cr. 435, 263 P. 158, it was held: 'A verdict finding the defendant guilty as charged in the information, and fixing his punishment "at ———— or by the court," is insufficient as to form, and is too vague and uncertain to support a judgment and sentence.'

"See, also, Rea v. State, 6 Okla. Cr. 366, 118 P. 815; Campbell v. State, 14 Okla. Cr. 319, 170 P. 915; George

et al. v. State, 28 Okla. Cr. 388, 231 P. 318." 81 Okla. Cr. 412, 165 P. 2d 381, 386.

It is a general rule that only those questions can be considered upon appeal, unless jurisdictional, which were decided adversely to the defendant in the trial court. However, it is so well settled as to be elementary that questions involving the jurisdiction of the trial court may be raised at any stage of the proceedings, and may be raised for the first time on appeal.

"Fundamental error," which can be considered on appeal without objection or exception, is error which goes to the foundation of the case, or takes from the defendant a right essential for his defense.

Where defects, as shown by the record proper, go to the sufficiency of the verdict to support the judgment and sentence, this court will examine into such questions, although presented for the first time in this court, unless they have been expressly waived by the defendant.

Assuming, but not conceding, that the verdict is insufficient to fix the punishment, it would clearly be sufficient under 22 O. S. 1941 § 914, as a general verdict of guilty, which imports a conviction of the offense charged.

In the dissenting opinion the opening statement is that:

"It is only when the jury does not attempt to fix the punishment in their verdict that the trial court may do so. 22 O. S. 1941 § 927."

Construing the foregoing section in the case of Felice v. State, 18 Okla. Cr. 313, 194 P. 251, Judge Matson speaking for the court in the opinion says: .

"The jury returned the following verdict:

" 'We, the jury impaneled and sworn in the above-entitled cause, do upon our oaths find the defendant, Fred Felice, guilty of attempt to kill as charged in the first count of the information, and assess his punishment at imprisonment in the state penitentiary for a term of ———.' * * *

"Upon the foregoing verdict, after overruling the motion for a new trial, the court sentenced the defendant to confinement in the state penitentiary at McAlester for the term of seven years. * * *

"The contention that the court erred in pronouncing judgment upon the verdict is without merit. This contention is based upon the proposition that the jury in the verdict did not assess the punishment nor state that they were unable to agree upon the punishment. The jury, by the terms of the verdict, found the defendant guilty as charged in the first count of the information, and assessed his punishment at 'imprisonment in the state penitentiary for a term of ———.'

"The statute upon which this prosecution is based reads as follows: (Quoting 21 O. S. 1941 Sec. 652.) * * *

"The court, in rendering judgment, imposed a sentence of seven years' imprisonment, which was authorized under the statute.

"Section 5934, Revised Laws 1910 (22 O. S. 1941 Sec. 927.) is as follows:

" 'Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly.'

"In Blair v. State, 4 Okla. Cr. 359, 111 P. 1003, construing the above last-quoted statutory provision, this **court held:**

" 'Where the jury returns a verdict of conviction, but fails to assess the punishment to be inflicted, it is the duty of the court to assess and declare the punishment.'

"Also, in Bayless v. State, 9 Okla. Cr. 27, 130 P. 520, it is held: * * *

"It was clearly, therefore, within the discretion of the trial court to pronounce judgment upon the verdict rendered even had defendant excepted to the reception of the verdict, which was not done in this case. Under the express terms of section 5934, supra (22 O. S. 1941 Sec. 927), the court was authorized, under the circumstances disclosed by this record, to assess and declare the punishment upon the verdict returned, and the court having assessed a punishment such as was authorized by the terms of section 2336, supra (21 O. S. 1941 Sec. 652), the contention urged that the trial court erred in pronouncing judgment is clearly without merit. * * *

"The jury evidently could not agree upon the punishment which should be imposed upon the defendant. At least the jury did not agree upon the punishment. The maximum punishment authorized is by imprisonment in the state penitentiary for a period of ten years."

The cases cited in the dissenting opinion are clearly not in point.

In the Wingfield case, 38 Okla. Cr. 435, 263 P. 158, 159, the defendant was charged with larceny of hog wire fence of the value of $11 or $12. The evidence was insufficient to sustain a conviction. The verdict was:

"We, the jury * * * find the defendant guilty as charged in the information, and fix his punishment at ———— or by the court."

The defendant objected and excepted to the verdict when rendered; also saved exception in the motion for new trial, and was sentenced to pay a fine of $50 and

costs and to serve a term of ten days in jail. From the judgment and sentence he appealed, assigning that the court erred "as a matter of law in receiving the verdict of the jury in said cause," on the ground that the verdict was not sufficiently clear and in proper form to sustain the sentence imposed by the court.

The other cases cited in the dissenting opinion, Rea v. State, 6 Okla. Cr. 366, 118 P. 815; Campbell v. State, 14 Okla. Cr. 319, 170 P. 915, and George et al. v. State, 28 Okla. Cr. 388, 231 P. 318, are not in point.

In the Rea Case, supra, the defendant was convicted of violating the prohibitory liquor law.

The verdict was as follows:

"We, the jury, drawn, impaneled, and sworn in the above-entitled cause, do upon our oaths find the defendant guilty as charged in the indictment herein and impose a fine of $50.00, and recommend that the court suspend the jail sentence."

This court held, that the verdict returned is insufficient to support a judgment of conviction and sentence.

In the opinion we said:

"Upon returning into court the above verdict, the attention of the court was by the plaintiff in error called to its informality and he moved the court to direct the jury with proper instructions to return and reconsider the verdict, which was by the court overruled.

This action of the court is assigned as error, and the Attorney General by a confession of error concedes that the assignment is well taken. The verdict in form returned is insufficient to support a judgment of conviction and sentence. Under the law, in a verdict of guilty, the jury may assess and declare the punishment which must in cases of this kind be both fine and im-

prisonment, or if they fail to agree on the punishment, or do not assess the punishment, the court shall assess the punishment. Having returned an erroneous and informal verdict, it was the duty of the court to direct them to reconsider their verdict as provided by section 6878, Snyder's Sts. 22 O. S. 1941 Sec. 919.)"

In the Campbell Case, supra, this court held:

"A verdict finding the defendant 'guilty as charged in the information and submit his punishment to the court' is insufficient as to form and is too vague and uncertain to support a judgment for the highest degree of the offense charged."

In the opinion we said:

"The Attorney General has filed a confession of error in part as follows:

" 'In reading the testimony alone a casual reader would wonder how the jury arrived at a verdict of guilty, inasmuch as the testimony for the defense and the admissions of the prosecuting witness, H. C. Schnapel, show that Schnapel himself began the difficulty, and in the last instance by taking a deliberate aim with a Winchester at Campbell. But the jury had all the witnesses before them, and settled this question in favor of the prosecution.

" 'In looking at the instructions we find what we think is their reason. The learned court below instructed the jury only upon the theory of mutual combat (see Driggers v. United States, 1 Okla. Cr. [167], 193, 95 P. 612, 129 Am. St. Rep. 823), but did not instruct the jury upon the theory relied on by Campbell in his proof, which should have been done (see Douglas v. Territory, 1 Okla. Cr. [583], 584, 98 P. 1023.) We do not think that the theory of mutual combat prevails in this case. Campbell might not have been a peaceable man, but he was on his own land, and found Schnapel actually appropriating his cotton, and after they had had a little fight with each other, Schnapel went away saying he would come

back and kill him. The defendant had a right to go on his own land anywhere he pleased, and Schnapel had no right to forbid him; but in the instant case he had a wagon and hands at work and cotton being picked at the identical spot he was forbidden to go. This was not a mutual combat on the part of the defendant, but it was the simple assertion of his right to use his own property, to be present when it was done, and to resist an intruder. Had this theory been given to the jury, we have serious doubts as to whether or not they would have returned a verdict as finally brought in. Having failed to give the theory of the defendant to the jury, and the theory that is upheld by all his proof, we think such error was committed as would authorize the reversal of this case.'

"Upon a careful examination of the record we have reached the conclusion that the judgment in this case should be reversed. In the first place, the information charges the common-law offense of assault with intent to kill and murder. There is no such offense known to our statute. There is a well-recognized distinction between an assault with intent to murder and an assault with intent to kill. * * *

"Our Criminal Procedure provides that the jury may find the defendant guilty of any offense the commission of which is necessarily included in that with which he is charged in the indictment or information. Section 5923, Rev. Laws [1910]. [22 O. S. 1941 Sec. 916.] Under the statute the trial court should submit the case to the jury for consideration upon every degree of assault which the evidence in any reasonable view of it suggests, and the instructions must be applicable to the testimony introduced upon the trial.

"We are also of the opinion that, for the reasons therein stated, the confession of error is well founded. The defendant being, where he had a right to be, on his own premises, at the time the complaining witness advanced upon him with a deadly weapon, the law of mutual combat did not apply.

"It follows that the instructions complained of were prejudicial to the substantial rights of the defendant."

In the opinion in the George Case, supra, we said [28 Okla. Cr. 388, 231 P. 320]:

"The accusation in this case not being sufficiently direct and certain, the demurrer thereto should have been sustained.

"In the brief for the defendants it is argued that the verdict is insufficient to support the judgment, in that it is not sufficiently definite and certain to enable the court to properly pronounce judgment. The record shows objection made and exception reserved to the receiving of the verdict. The verdict finds 'the defendants guilty,' and stops there, and fails to designate the punishment as to each of the defendants. We are inclined to think the objection to the verdict was well taken.

"The evidence shows that the city marshal and two assistants went to the home of the defendants, in Cleveland, about 8 o'clock in the evening; two entered the front, and the other entered the back, door. Only the two defendants were there; they being husband and wife. They did not have a search warrant. The marshal testifies he found the defendant, Eddie George, with a pitcher in his hand containing whisky—almost two pints. There was some testimony tending to show that the home of the defendants had the reputation of being a place where intoxicating liquor was kept for sale.

"Considering the evidence as a whole, we think it was insufficient to show a violation of any provision of the prohibitory liquor laws. The attorney general concedes that the judgment in this case should be set aside."

It follows that the cases cited do not sustain the contention that the verdict is insufficient to support the judgment and sentence imposed.

The uniform holding of this court is that the sufficiency of an informal verdict must be considered with

reference to the pleadings, the evidence in the case, and the instructions given, as shown by the record proper; also in the absence of any objection or exception in the trial court.

The policy and rules of law applicable to the proposition presented have clearly been set forth in the following opinions:

In the case of Bowlegs v. State, 9 Okla. Cr. 69, 130 P. 824, the indictment was for murder. The verdict was:

"We, the jury, * * * do upon our oaths find the defendant guilty of manslaughter as charged in the indictment, and assess his punishment at confinement in the state prison for a period of ten years."

"Held, that the verdict is sufficiently definite and certain as to the offense of which the defendant was convicted, and is in fact a verdict of guilty of manslaughter in the first degree."

In the opinion we said:

"The alleged error upon which the defendant most confidently relies for a reversal of the judgment against him is that the verdict is insufficient to sustain the judgment. * * *

"Counsel contends that the verdict is insufficient, because it fails to observe the requirements of section" 915 supra.

And stating this section must be construed with section 914 of this title, authorizing a general verdict which imports a conviction or acquittal of the offense charged, and section 919 of this title, authorizing the correction of an informal verdict, and section 926 of this title providing that the jury shall assess and declare the punishment in their verdict.

And concludes as follows:

"While the verdict in the case at bar is technically informal, it is sufficiently definite and certain as to the offense and degree of which defendant was convicted, and it is, in fact, a verdict of guilty of manslaughter in the first degree. We think the defect is not sufficient to affect the substantial rights of the defendant. He was present, his counsel was there, and this verdict was received and read in his hearing, and no objection was made. It is our opinion that the error is not one which will justify a reversal of the judgment."

In Williams v. State, 11 Okla. Cr. 82, 142 P. 1181, this court held:

"When a person is charged by information with having the possession of a forged or counterfeited instrument with intent to injure another by uttering the same, and the jury returns a general verdict of guilty, fixing the punishment within the limit prescribed by statute for such offenses, and counsel save no exceptions or make no complaint of the sufficiency of the verdict at the time, this court will not reverse a just conviction."

In Love v. State, 12 Okla. Cr. 1, 150 P. 913, 917, this court held:

"While verdicts in criminal cases should be certain, and free from ambiguity, yet any words that convey, beyond a reasonable doubt, the meaning and intention of the jury, are sufficient, and all fair intendments will be made to sustain them."

In Coleman v. State, 16 Okla. Cr. 579, 194 P. 282, this court held:

"A verdict will not be held void for uncertainty if its meaning can be determined by reference to the record proper."

In the opinion we said:

"The verdict is not in proper form; but, when considered in connection with the charge in the information and the instructions given by the court, it is sufficiently definite and certain as to the offense of which the defendant was convicted, and is in fact a verdict of guilty of assault with a dangerous weapon with intent to do bodily harm. * * *

"Says Mr. Bishop:

" 'The language of the verdict, being that of "lay people," need not follow the strict rules of pleading, or be otherwise technical. Whatever conveys the idea to the common understanding will suffice, and all fair intendments will be made to support it.' 1 Bish. New Cr. Proc. (4th Ed.), § 1005.

"While the verdict is defective, its language expresses the intention and purpose of the jury to find the defendant guilty of assault with a dangerous weapon with intent to do 'bodily harm as charged in the information herein,' and the defendant should have objected to the verdict when returned, which would have called the attention of the court to its defective form and given opportunity for its correction; and, having failed to do this, the defendant waived the defects in the form of the verdict."

In Hardeman v. State, 15 Okla. Cr. 229, 175 P. 948, this court held:

"A verdict which finds a defendant guilty of burglary as charged in the indictment, if the indictment clearly charges burglary in the first degree, is sufficient, and is not vitiated by reason of the failure of the jury to find the degree of the burglary."

In the case of Hudson v. State, 37 Okla. Cr. 290, 258 P. 352, 354, the defendant was convicted of receiving deposits in an insolvent bank. The verdict is challenged as vague, indefinite and uncertain, and Judge Edwards after an elaborate review of the authorities, concludes:

"No objection was made to the verdict when returned. If the form of the verdict is not sufficiently definite and the attention of the court is called to it at the time, an opportunity is thus given for its correction. When this is not done, the objection will be deemed to have been waived if by fair intendment and inference the intent and purpose of the jury, as expressed in their verdict, may be gathered from the record."

In Jenkins v. State, 44 Okla. Cr. 217, 280 P. 477, 478, Edwards, P. J., says:

"It is next argued that the verdict is too indefinite to sustain the judgment. Omitting the formal parts, the verdict is:

"'We, the jury in the above-entitled action, duly impaneled and sworn, upon our oaths, find the defendant guilty of robbery as charged in the information and leave his punishment to be fixed by the court.'

"Counsel urge that this verdict is insufficient, in failing to state the degree of robbery for which defendant was convicted, and in failing to state that the jury were unable to agree upon the punishment. At the time the verdict was returned, objection to the form of the verdict was made, and the court inquired in what particular it was insufficient, and counsel declined to make more specific his objection. The defendant is charged with robbery in the first degree. § 1790, Comp. Stat. 1921 (21 O. S. 1941 § 797.) The verdict finds him guilty as charged. In the absence of a more specific objection, the verdict is sufficient. Where the intent and purpose of the jury as expressed in their verdict can be clearly ascertained, it will be upheld, particularly when any defect claimed is not specifically pointed out at the time it is returned. * * *

"It does not appear that counsel requested the court to require the jury to assess and declare the punishment, but this was submitted by the court under the provisions of sections 2750 and 2751, Comp. Stat. 1921 (22 O. S.

1941 §§ 926, 927.)   By the latter section it is provided:
\* \* \*."

Quoting section 927, Id.

"Under this provision of the law, it is not essential that the jury shall expressly state in their verdict that it is unable to agree upon a verdict."

In 27 R.C.L., Verdict, sec. 31, p. 860, the rule is laid down as follows:

"So, where the manifest intention of the jury is easily ascertained from the language of the verdict the fact that a word or words are omitted will not vitiate it. Thus a verdict that 'we the jury the defendant guilty,' has been held not to be vitiated because of the omission of the word 'find;' and a verdict of "guilty of murder in the first degree, and penitentiary for life,' has been held to be sufficient to sustain a conviction and sentence accordingly. Where numbers or figures are used in connection with a statement of value, they are to be understood as referring to dollars, unless a different intention appears. Consequently the omission to insert the word 'dollars' or the corresponding mark does not render the verdict indefinite."

In Dunbar v. State, 75 Okla. Cr. 275, 131 P. 2d 116, 117, this court held:

"Syl. 9.   Where a verdict is irregular in form, but is not objected to at the time it is returned, and the court given an opportunity to have the jury correct it, every intendment and inference will be indulged to uphold it, and where from an examination of the verdict, and the entire record, the intent and purpose of the jury as expressed in the verdict may be clearly ascertained, it will be upheld."

The verdict was:

"We the jury \* \* \* do upon our oaths find the defendant guilty of 'assault with a dangerous weapon' as

charged in the Information and assess his punishment at imprisonment in the State penitentiary for a period of 1 year."

In the opinion we said:

"It is also contended that the verdict rendered is too indefinite and uncertain and for this reason the trial court was without jurisdiction to sentence the defendant to imprisonment in the penitentiary for one year on the verdict as rendered.

"It appears no. objection was made to the reception of the verdict. Nor do we find from the record that this question was ever raised in the trial court.

"When considered in connection with the offense charged in the information, the instructions given by the court, and the punishment assessed, it is sufficiently definite and certain as to the offense of which the defendant was convicted.

"This court has repeatedly said in numerous decisions that a verdict will not be held void for uncertainty if its meaning can be determined by reference to the record proper. Bowlegs v. State, 9 Okla. Cr. 69, 130 P. 824; Walker v. State, 11 Okla. Cr. 339, 127 P. 895; Simmons v. State, 15 Okla. Cr. 442, 177 P. 626; Coleman v. State, 16 Okla. Cr. 579, 194 P. 282; Pruitt v. State, 17 Okla. Cr. 434, 190 P. 894; Bard v. State, 23 Okla. Cr. 309. 214 P. 939; Gidens v. State, 31 Okla. Cr. 137, 236 P. 912; Nelson v. State, 34 Okla. Cr. 187, 245 P. 1009; Horton v. State, 44 Okla. Cr. 318, 280 P. 857; Bayne v. State, 72 Okla. Cr. 52, 112 P. 2d 1113."

The salient facts as shown by the evidence for the state, briefly stated, are as follows:

H. O. Crane testified:

"I live at Lincoln, Arkansas, I am 52 years old, and boarded the bus at Muskogee; it was near one o'clock Monday morning, I was coming here to work as a pipe-fitter in the Okmulgee Hospital, I saw the defendant

on the bus, he was sitting in the white compartment, I never spoke a word to him, and he did not say anything to me. The bus driver asked him to get back in that division of the bus set aside for his race, and he said he would ride where he pleased. The driver called the M.P.'s, two came in, they tried to persuade him to go back, he refused, they went out, later two M.P.'s came in, I think one an army officer and persuaded him to go back where he belonged, I saw other colored people sitting back there, the bus left right away after he went back, I later got up and sat down in the front seat, on the right hand side, next to the door. As I understand the bus stopped at the Frisco tracks in Okmulgee, I was asleep, is all I know, I got hit there, I was leaning back in the seat, I do not know where he was when he hit me. As a result I suffered the loss of one eye and almost the other one, also a broken nose, and the nerves around the eye, and in my face have been injured. The ball of the right eye was cut open, total blindness in my right eye; Dr. Tracewell was my attending physician. I was in the hospital at Okmulgee 31 days."

His cross-examination was in part as follows (Page 67 C.M.):

"Q. Mr. Crane, you have a suit pending in this court against the Santa Fe Trails Transportation Company, for damages, do you not? Mr. Wallace: We object to that as incompetent, irrelevant and immaterial. The Court: Sustained. Mr. Hall: Exception (Counsel confer with court out of the hearing of the jury.) Mr. Hall (continuing): Q. You brought a civil suit in this court for $33,000 against the Santa Fe Bus Company? A. Yes, sir. Q. You are interested in securing the conviction of this boy because you realize it will assist you in obtaining a verdict in that civil suit? A. Not exactly, no. Q. It wouldn't make any difference? A. Not in that case. Redirect Examination (P. 69 C.M.): Q. What court is that suit pending in now? A. Federal Court."

Dr. George L. Tracewell testified:

"First saw the defendant about 2:30 in the morning in a Santa Fe Bus, on the 'Frisco tracks,' he was confined in the hospital 31 days, he had suffered a laceration through the right eyeball. That extended down two inches across the nose, went across his right cheek; had a laceration of both eyeballs. I last examined him ten days ago. In the right eye he has light perception. In the left eye, without lens, he has 10 per cent vision, with a glass before the eye, about 25 per cent is the best obtainable. His vision is 10 per cent in the left eye, the vision in the right eye, in my opinion, and of two other physicians is a permanent loss. In the left eye, he had a laceration through the cornea and the iris of the eyeball. As a result of this blow he is disfigured, not only produces blindness, but it has disfigured him as a result of this injury, this injury is of such a nature and extent, I don't think he will ever be able to work at his trade."

Mrs. Juanita Action testified:

"I live in Okmulgee, I got on the bus below Sallisaw and rode to Muskogee, the bus stopped there about 20 minutes, I saw Mr. Crane when he moved up the aisle and sat across from me, he took the front seat, the first time I noticed the defendant the bus driver was talking to him and asked him to move back in the colored section of the bus, he was sitting in the white section of the bus, they called the military police, he didn't move back, they called them a second time, a lieutenant or some officer got him to move back. When the bus stopped east of the Frisco tracks in Okmulgee, the defendant was sitting in the back, other colored persons were sitting back there. The defendant came up quickly, it was so quick I never noticed it, he struck Mr. Crane across the face with a bottle, what glass he didn't get, I did, I had one cut finger, he broke the bottle with such force it broke into a thousand pieces. Mr. Crane was not able to see anything after he hit him, blood streaming down his face. I noticed the label on the bottle, it was whisky. Mr. Crane was sitting pretty erect at the time it happened, his head was leaning back."

Her cross-examination was in part as follows:

"Q. Did the defendant pass him before he struck him with the backhand blow? A. Yes, he was on the step, came back and struck him just as he started to leave."

Two negroes had gotten off just before the defendant did.

On redirect she stated:

"The bus driver and two or three of the passengers took after the defendant. The bus stopped about 20 minutes before Dr. Tracewell got there."

The testimony of Mrs. Ramona Howell, taken at the preliminary hearing as stipulated and agreed by and between counsel for the defendant and the state that this deposition can be read in evidence, due to the fact that the witness is not in the jurisdiction of the court in substance, is as follows:

"I am known as Mrs. Franklin Howell, I was a passenger on the Santa Fe bus from Muskogee to Okmulgee on the night of June 21, 1943, all I saw is what happened when the defendant got off the bus, when the bus stopped near the Frisco Depot in Okmulgee, Mr. Crane was sitting on the right hand side in the front seat next to the door of the bus, I saw the defendant hit him with a whisky bottle, he didn't say anything to Mr. Crane before he struck the blow."

She further testified:

"Q. Just tell the court what you saw now? A. Well, this colored boy came up the aisle and when he got to Mr. Crane he struck him right in the face with this whisky bottle and it broke all over everything and then he jumped off the bus and ran; that's all I saw. Q. You never heard Mr. Crane say anything to him just before he struck the blow? A. No, sir, I didn't. Q. Just before the blow was struck did you see Mr. Crane make any demonsta-

tion whatever towards this defendant? A. No, sir, I did not."

The testimony of Howard Reckhon, given at the preliminary hearing, was also read to the jury as his deposition, and was substantially the same as that given by the other two eye-witnesses.

"At this time the state rests its case in chief. Thereupon counsel for the defendant interposed a demurrer to the evidence, and moves the court to acquit and discharge the defendant. The Court: Demurrer overruled. Exception allowed."

Counsel reads from the defendant's affidavit for continuance, depositions of Cornell Dade and Calvin Simmons.

The defendant, George Smith, as a witness in his own behalf in substance testified: Age 21 years, lives in Okmulgee, inducted into service October 29, 1942, discharged June 14, 1943, and came back to Okmulgee, went to Muskogee to spend the week end with his mother, got on the bus to return to Okmulgee and took a seat beside a white soldier, the bus driver asked him to move back, he did not move, bus driver said he would get some one to move him, went and got M.P.'s, they asked him to move. He refused to move. They informed an officer. He came in. He explained his condition and his discharge, was still in uniform. "Military custom as long as you are in uniform is obey an officer," and at his request he moved back. That he first noticed Mr. Crane when the officer and M.P.'s left, he said "By golly, you do not have to tell him to stay back there, I will keep him back there." The bus driver said, "I will handle it." The bus stopped at Boynton to let passengers off. Mr. Crane was constantly looking back and mumbling curse words, there were other colored persons on the bus, in-

cluding the two persons named in the depositions. He further testified that:

"As the bus neared Okmulgee, I was afraid of Mr. Crane, I picked up a whisky bottle lying in the seat, I do not drink, and it is not true what some witness said about smelling liquor on my breath, that is false. I intended to get off at the station. After I noticed Mr. Crane and his attitude toward me, I was afraid to go on down. I was too weak for any one to bother me. I decided I would get off at the crossing on the Frisco tracks. I had this bottle in my right hand, I started off and these witnesses went off before me; I noticed Mr. Crane noticing every one that got off. When I reached him, Mr. Crane arose with his hand in his pocket and mumbling curse words and there not being any one between me to stop him, well, I think I had it by the neck. I wouldn't have struck Mr. Crane for anything; I was afraid of him; he had made one attack; I didn't know what would happen if the bus driver had not stopped him, just one door to get out, he was blocking that door, nothing to do but to strike him, not intending to injure him, just as a means of getting away."

Asked: "Did you believe your life was in danger? A. Yes, sir."

"Q. What did you do after you struck him? A. Well, after I struck I got off the bus and ran so that I could get into shelter as quick as I could, and went into a friend's house."

Three character witnesses testified that the defendant's general reputation in the community as being a peaceable law-abiding citizen was good.

In rebuttal, H. O. Crane testified that he never did say anything to the defendant or make any threatening motion or make faces at him, or anything like that, that he was leaning back asleep when hit with the bottle, and did not stand up or try to block or prevent the de-

fendant from getting off the bus, and never moved until after he was hit by the bottle.

The defendant recalled as a witness in his own behalf testified:

"Q. I hand you a paper which has been marked for identification defendant's Exhibit 'I', and ask you to examnie that, and state whether or not that is the discharge you received when you were discharged from the army? A. Yes, sir, it is. Mr. Hall: We offer in evidence, defendant's Exhibit 'I.' Mr. Wallace: No objection. The court: It will be admitted."

Which recites:

"Physical condition when discharged: * * * good. Married or single: * * * Single. Is not recommended for re-enlistment."

The case-made is voluminous, over 250 pages, but the foregoing statement of the evidence is sufficient to show that the defendant's demurrer thereto was properly overruled. The defendant as a witness in his own behalf admitted that he struck the blow with a whisky bottle that caused the maiming of his victim and pleaded the act was in his necessary self-defense. Upon the defendant's own testimony, as we view the record, he was not justified in assaulting and maiming the complaining witness with a dangerous weapon.

Before one can justify a felonious assault with a dangerous weapon, with the felonious intent to maim, he must at least show that there was reasonable grounds for believing that he apprehended imminent danger of great bodily injury. However, the question is not how much evidence there is on the issue of self-defense, but is there any evidence tending to support the issue? If there is, it is the duty of the trial court to submit such

issue to the jury and instruct the jury on the law applicable thereto, if found to be true,

Whether the defendant believed at the time he struck the complaining witness across the face with a whisky bottle, thus maiming his victim as shown by the evidence, that he was in imminent danger of great bodily harm at the hands of the complaining witness, and that it was necessary to employ the force used to prevent such injury, and whether the defendant under the facts and circumstances of this case had reasonable grounds for such belief, even though such danger was not real but only apparent, were questions of fact for the jury under proper instructions of the court as to the law of apparent self-defense.

The defendant's unlawful and disorderly conduct from the time he entered the bus is undisputed, and there can be no doubt from the evidence that the defendant without even a plausible pretext of provocation, committed the crime charged, and the facts as testified to by the defendant, and the facts as set forth in his affidavit for continuance, if true, afforded no justification, and his testimony and their statement of the occurrence was clearly impeached by the undisputed facts in evidence. One who seeks and brings on an affray cannot shield himself under a plea of self-defense.

The instructions given by the court, to which no objection was made, or exception taken, show that the jury were fully and correctly instructed upon the law of the case. In fact, the instructions were exceedingly favorable to the defendant.

The instruction on the issue of justifiable self-defense concludes as follows:

"In this connection, you are told that the law requires you to look at the circumstances from the defendant's standpoint, and to put yourself as nearly as possible in the defendant's place at the time. It is not necessary that the danger should have been real and imminent. All that is necessary is that the defendant had reasonable cause to believe and did believe these facts, as they reasonably appeared to him; and, after so doing, if you believe that the defendant was justified, or if you have a reasonable doubt as to whether or not he was justified in protecting himself in the conflict, and acted in good faith, believing that he was in danger of receiving great bodily harm, then, in either event, you should acquit the defendant."

It is often said that the law is confessedly tender of rights of persons accused of crime, but it is hardly subject to the charge of authorizing them to build up a theory of innocence upon fictitious, false or fraudulent assumptions.

The evidence conclusively and beyond any possible doubt established the guilt of the defendant of the crime charged. Any verdict other than the one rendered would have been a reproach upon the due administration of justice in this state. To all appearances, as shown by the evidence, a more wanton, dastardly and brutal maiming was never perpetrated.

After a most careful examination of the case, both as to the law and the evidence, we have failed to discover anything whereof the defendant has any just right to complain. Our conclusion is that the defendant had a fair and impartial trial and was properly convicted.

It follows the judgment of conviction of district court of Okmulgee county should be allowed to stand, as the law demands.